06-1272-cv
Gilles v. Repicky

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2006

(Argued: March 14, 2007                                        Decided: December 21, 2007)

Docket No. 06-1272-cv

MARIE GILLES,

*Plaintiff-Appellant*,

− v. −

GUY. J. REPICKY,

*Defendant-Appellee.*

Before: CALABRESI and WESLEY, *Circuit Judges,* and SESSIONS, *District Judge.*[*]

Appeal from the February 16, 2006 judgment of the United States District Court for the Southern District of New York (Brieant, *J.*) granting motion for summary judgment and dismissing claim for damages for violation of appellant's Fourth Amendment right to be free from unreasonable search and seizure.

The judgment is vacated, and the case is remanded for further proceedings.

RUSSELL A. SCHINDLER, Kingston, New York, *for Plaintiff-Appellant.*

CHARLENE M. INDELICATO, Westchester County Attorney, *for* Stacey Dolgin-Kmetz, Chief Deputy County Attorney (Mary Lynn Nicolas, *of counsel*), White Plains, New York, *for Defendant-Appellee.*

WILLIAM K. SESSIONS III, *District Judge*:

---

[*] The Honorable William K. Sessions III, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

Plaintiff-appellant Marie J. Gilles brought suit under 42 U.S.C. § 1983 against defendant-appellee Guy J. Repicky seeking damages for violation of her Fourth Amendment right to be free from unreasonable search and seizure. She appeals from a February 16, 2006 judgment of the district court (Brieant, *J.*) granting Repicky's motion for summary judgment and dismissing her claim. For the reasons stated below, we vacate the decision and remand to the district court for further proceedings consistent with this opinion.

**BACKGROUND**

On August 11, 2004 at approximately 8:30 a.m. Marie Gilles, a fifty-year old United States citizen of Haitian descent, was traveling southbound through Westchester County on the Taconic State Parkway. She was driving a 1994 white Dodge cargo van, owned by her brother. She was transporting approximately ten packed fifty-five gallon cardboard barrels to a shipping facility in Mount Vernon, New York. Gilles owned the Adonai Community Store, a grocery store, in Poughkeepsie, New York. As part of her business she provided a shipping service for her customers to send supplies to relatives overseas. Gilles did not have personal knowledge of the contents of the barrels, but had the shipping invoices with her. According to the invoices, the barrels contained food and clothing to be shipped to destinations in Jamaica and Haiti.

On his way to work Detective Guy Repicky noticed Gilles' van, driving approximately 65 m.p.h. and apparently heavily laden. Repicky observed some barrels, partly covered by a blanket. He also noticed that the van slowed and moved abruptly into the right lane when passed by a marked police car.[1]

---

[1] Gilles denied that she was traveling at 65 m.p.h., or that she abruptly changed lanes, but stated that she did slow down in order for a police vehicle to pass her.

Repicky has been employed with the Westchester County Department of Public Safety since October 1990, and has been a detective since 1997. In November 2003 he was assigned to the department's Counter-Terrorism Unit. As part of his responsibilities he was advised by the New York State Police Upstate New York Regional Intelligence Center of all terrorism alerts and activities relevant to Westchester County. In August 2004, as a result of the Republican National Convention which was scheduled to start on August 30, the Department had been put on alert for "vehicle-borne improvised explosive devices" (VBIEDs) which could possibly be used in the New York metropolitan area. Vans were specifically indicated as capable of carrying such devices. Repicky was aware of this alert.

Repicky called his dispatcher and requested that she run the van's license plate. His dispatcher informed him that the plate had been reported as stolen.[2]

Repicky requested state police assistance to stop the van, and was present when several New York State Police marked patrol cars stopped the van at approximately 8:45 a.m. Repicky approached the passenger side of the van, and a state trooper approached the driver's side of the van. Both officers approached the van with their guns drawn. Gilles testified that Repicky screamed at her, pointed his gun at her and threatened to shoot her if she moved. The state trooper ordered Gilles out of the van, and placed her in handcuffs. She was placed in the rear of the marked police car, with her hands cuffed behind her back.

Gilles and Repicky disagree about what happened next. Gilles asserts that she was asked

---

[2] In August of 2003 Gilles had reported to the Town of Marlborough Police Department that one of the van's license plates had been lost. A few weeks later the plate was found, and she informed the Marlborough police. The Marlboro Police Department, however, had incorrectly entered the plate into the system as stolen, and failed to correct the error.

3

for her driver's license and she responded that it was in her car. She kept asking "what did I do?" She told Repicky that the barrels contained food, clothing and school supplies. Repicky asserts that Gilles initially didn't answer his questions and that she was very upset and crying, that after about five to ten minutes she became "responsive," but repeatedly told Repicky that she did not know what was in the barrels.

After the van was pulled over, a bomb-sniffing dog was brought to the scene, but did not alert. Repicky then requested a narcotics dog. While the narcotics dog was at the scene, Repicky was informed that the reported stolen license plate was an error. The narcotics dog also did not alert.

Gilles and Repicky again disagree about what happened next. Repicky contends that after he learned about the stolen license plate error, he asked another officer on the scene to remove Gilles' handcuffs, approximately fifteen to twenty minutes after the initial stop. Gilles contends that she was held in handcuffs for more than one hour.

The officers searched the van and recovered Gilles' driver's license and the shipping invoices. They did not discover any explosive devices or materials that could be used to create such a device. Gilles maintains that she explained that her customers bought quantities of food and clothing items on sale in this country to send to their relatives in Jamaica and Haiti. Repicky claims that Gilles continued to disavow knowledge of the contents of the containers.

According to Repicky, at approximately 10:00 a.m. he requested that Gilles accompany him to headquarters, but told her "I can't just let you go." Repicky testified that his motive for asking her to "come voluntarily" to headquarters was to enable her to use the bathroom to clean up because it was evident that she had begun to menstruate heavily. According to Gilles,

4

Repicky ordered her to follow them back to headquarters. Gilles acknowledged that she had begun to bleed, but testified that Repicky never asked her to come to headquarters or gave her any reason other than that he had to complete his investigation. Gilles was permitted to drive her van, with a police vehicle in front of her and a police vehicle behind her. She did not feel free to leave, and Repicky testified that she was detained at that point, although not under arrest.

At police headquarters, Repicky eventually spoke to someone at the shipping company, who confirmed that Gilles had an ongoing business relationship with them. Repicky spoke with his supervisors and then informed Gilles that she was free to leave, at 11:30 a.m.

Gilles filed a civil rights action against Repicky, asserting that her continued detention violated her Fourth Amendment right to be free of unreasonable search and seizure. In an unpublished decision, the district court granted summary judgment to Repicky, finding that Repicky was entitled to qualified immunity for his actions. *Gilles v. Repicky*, No. 05 Civ. 374 (CLB), 2006 WL 360171, at *4 (S.D.N.Y. Feb. 15, 2006). Specifically, the district court concluded "that it was objectively reasonable for Detective Repicky to have believed that his actions were lawful at the time of the stop and detention of Plaintiff." *Id.* The district court dismissed Gilles' contention that her continued detention was unreasonable: "the fact that more time was taken than necessary in connection with otherwise reasonable police conduct is not in itself a basis for a civil rights violation." *Id.*

## DISCUSSION

### I. *Standard of Review*

"'We review a grant of summary judgment *de novo*, construing the record in the light most favorable to the non-moving party.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d

5

Cir.) (quoting *Hoyt v. Andreucci*, 433 F.3d 320, 327 (2d Cir. 2006)), *cert. denied*, 128 S. Ct. 109 (2007). We accept Gilles' evidence as true and draw all reasonable inferences in her favor. *Id.*; *see also Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007). We will affirm a grant of summary judgment where there is no genuine issue as to any material fact, and where the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Thus, we will affirm the district court only if no rational trier of fact could conclude that the facts established that Repicky violated Gilles' constitutional rights and was unprotected by qualified immunity. *See Russo*, 479 F.3d at 203.

## II. *Qualified Immunity*

Qualified immunity protects officials from liability for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is "clearly established" if "[t]he contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

> When a defendant officer charged with violations of federal constitutional rights invokes qualified immunity to support a motion for summary judgment, a court must first consider a threshold question: Do the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right?

*Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007). If the facts, viewed in that light, do not establish a violation of a constitutional right, "'there is no necessity for further inquiries concerning qualified immunity,'" and the officer is entitled to summary judgment. *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

6

If, however, the facts could establish a violation of a constitutional right, then "the next . . . step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. In determining whether a right was clearly established, a court asks "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Walczyk*, 496 F.3d at 154 (quoting *Saucier*, 533 U.S. at 202) (emphasis omitted). The inquiry into whether a right at issue was clearly established is tied to the specific facts and context of the case. *Id.*; *Saucier*, 533 U.S. at 202. If the conduct did not violate a clearly established constitutional right, or if it was objectively reasonable for the officer to believe that his conduct did not violate such a right, then the officer is protected by qualified immunity. *See Russo*, 479 F.3d at 211 (quoting *Poe v. Leonard*, 282 F.3d 123, 133 (2d Cir. 2002)); *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (quoting *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001)).

### III. *Fourth Amendment Violation*

Gilles argues that the initial seizure of her vehicle and person was unconstitutionally prolonged for more than two hours after any reasonable suspicion of criminal activity had dissipated, during which she remained confined in handcuffs at the scene and then was directed to accompany the officers to police headquarters.[3]

---

[3] Gilles properly has not contested the legality of the stop of her vehicle. A brief investigatory stop of a vehicle based on probable cause or reasonable suspicion "that criminal activity 'may be afoot'" does not contravene the Fourth Amendment. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). For approximately thirty minutes, during which Repicky verified that Gilles' license plate had not been stolen, searched her van and recovered her valid driving license and the shipping invoices, and subjected the van to canine searches for bombs and drugs without result, Gilles concedes that the stop was supported by reasonable suspicion, if not probable cause. *See Whren v. United States*, 517 U.S. 806, 819 (1996) (probable cause to believe driver committed traffic violation rendered automobile stop reasonable under the Fourth Amendment); *see also United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006) (reasonable but mistaken belief as to facts establishing

7

The district court did not undertake the first step of a *Saucier v. Katz* analysis, namely whether the facts showed a violation of Gilles' Fourth Amendment rights. Because it would be unnecessary to undertake the second step of the analysis were no Fourth Amendment violation found, we proceed to determine whether the facts, if proven, would demonstrate a Fourth Amendment violation.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. The temporary detention of a person when the police have stopped her vehicle, regardless of its brevity or limited intrusiveness, constitutes a seizure for Fourth Amendment purposes, and thus must not be unreasonable. *Whren v. United States*, 517 U.S. 806, 809-10 (1996).

Contrary to the district court's view, it has long been the law that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion); *see also United States v. Tehrani*, 49 F.3d 54, 58, 61 (2d Cir. 1995) (scope and duration of investigative detention must be reasonable, both as to stop and to inquiry).

The right to be free from arrest without probable cause has likewise long been established. *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("Without a doubt, the right not to be arrested without probable cause is clearly established."). If police officers "restrain an individual in a manner that, though not technically an arrest, is nonetheless so intrusive as to be

probable cause will not undermine constitutional validity of a stop).

8

'tantamount' to an arrest," probable cause is also required. *United States v. Marin*, 669 F.2d 73, 81 (2d Cir. 1982). "[P]robable cause to arrest exists when police officers have 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Walczyk*, 496 F.3d at 156 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Police officers may not seek to verify or dispel their reasonable suspicions of crime "by means that approach the conditions of arrest." *Royer*, 460 U.S. at 499 (citing *Dunaway v. New York*, 442 U.S. 200, 211-12 (1979)).

To be sure, not every police encounter, even one that occurs at a police station, constitutes an arrest. *See, e.g.*, *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam) (voluntary appearance at police station does not amount to custody). "[C]ustody must be determined based on how a reasonable person in the suspect's situation would perceive [her] circumstances." *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004). Whether Gilles reasonably believed that she was not free to leave the scene once her handcuffs were removed, or to refuse Repicky's request that she accompany the officers to police headquarters, is normally a question of law, to be determined from the circumstances as they developed. *See United States v. Ceballos*, 812 F.2d 42, 46-47 (2d Cir. 1987). This is "an objective inquiry [that] pointedly eschews consideration of intent and involves an essentially legal assessment of whether the particular circumstances would warrant the belief that a person has been detained." *United States v. Montilla*, 928 F.2d 583, 588 (2d Cir. 1991). "Pertinent factors identifying a police seizure can include

> the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance

9

with the officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room.

*Brown v. City of Oneonta*, 221 F.3d 329, 340 (2d Cir. 2000) (quoting *United States v. Hooper*, 935 F.2d 484, 491 (2d Cir. 1991)).

At the time police officers stopped Gilles' van, Repicky suspected that the driver of the van had committed a speeding violation, that the van could have contained explosive devices, and that the license plate on the van had been stolen. The decision to stop the vehicle was based upon probable cause. *See Whren*, 517 U.S. at 810. At issue is whether this initial probable cause justified Gilles' continued detention once Repicky's investigation failed to uncover any illegal activity or any reasonable suspicion of illegal activity.

Some twenty to thirty minutes after the stop, Repicky was informed that the stolen license plate report was an error. He had inspected the cardboard barrels and detected nothing suspicious. A bomb-sniffing dog had checked out the van. A narcotics dog had sniffed the van. Neither dog had alerted. Gilles' wallet had been retrieved from the van, and she produced a valid driver's license and registration. Repicky had recovered the shipping invoices from the van and Gilles had told him that she had a business transporting shipping containers for her customers in Poughkeepsie. Repicky's suspicion that Gilles was transporting VBIEDs, if not completely allayed, had been considerably dissipated.

After all this had occurred, Gilles was held at the roadside for approximately an hour and then directed to accompany the officers to police headquarters, where she was detained for another hour and a half. On this record, taking the evidence in the light most favorable to Gilles, she could not reasonably have felt free to depart from police presence once her handcuffs were

10

removed. Several police officers had effected the stop of her van, and two had approached her with drawn weapons. She had been handcuffed and placed in the rear seat of a police cruiser. After her handcuffs were removed Repicky requested that she accompany the officers to the police station, but told her that he couldn't just let her go. Although Gilles drove herself to the station, she was escorted by police cruisers in front of and behind her. The initial stop and investigative detention had evolved into a situation indistinguishable from an arrest, as the district court concluded. *See Gilles*, 2006 WL 360171 at \*3; *see also United States v. Sharpe*, 470 U.S. 675, 685-86 (1985) (investigative stop that exceeds time required to confirm or dispel suspicion with reasonable diligence becomes *de facto* arrest).

Accordingly, we conclude Gilles has demonstrated facts from which a reasonable factfinder could conclude that her continued detention without probable cause violated the Fourth Amendment.

IV. *Repicky's Entitlement to Qualified Immunity*

Nevertheless, Repicky is entitled to qualified immunity if his conduct did not violate a clearly established constitutional right, or if it was objectively reasonable for him to believe that his conduct did not violate such a right. *See Russo*, 479 F.3d at 211. The district court concluded on this second step of the *Saucier v. Katz* analysis that Repicky was entitled to qualified immunity: "He had arguable probable cause because it was objectively reasonable for him to believe that probable cause existed, and at the very least officers of reasonable competence could disagree on whether probable cause existed." *Gilles*, 2006 WL 360171 at \*4 (citing *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or

11

(b) officers of reasonable competence could disagree on whether the probable cause test was met.'").

"'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause." *Jenkins v. City of New York*, 478 F.3d at 87. If on the undisputed facts Repicky unreasonably concluded he had probable cause, or if disputed material issues of fact precluded a determination of probable cause, then summary judgment was inappropriate. *See id.* at 88. The district court found "arguable probable cause" based on "the awareness of a high level of terrorism alert, and the report that the license plate was stolen, together with his observation of fifty-five gallon drums covered with a blanket in an overweight vehicle headed towards New York City." *Gilles*, 2006 WL 360171 at *4. The district court noted additionally the fact that Gilles slowed down to the posted speed limit when a marked patrol car approached. *Id.*

The problem with the district court's analysis is that these factors supported the initial stop and a brief investigative detention. Repicky himself did not believe that he had probable cause based on the facts known to him at the point Gilles was released from handcuffs and then asked or told to go to the police station. *See Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) ("'Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'") (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). Once the factors giving rise to the stop were investigated, and produced no reason to conclude that Gilles had committed a crime (other than speeding), the most Repicky retained were suspicions. No reasonable officer could conclude that he had probable cause to arrest Gilles at that point, and accordingly Repicky is not immune from suit on this basis.

Because the district court incorrectly concluded that Repicky had "arguable probable cause" to arrest Gilles throughout their encounter, and failed to consider whether Gilles' detention was unconstitutionally prolonged, its conclusion that Repicky was protected by qualified immunity at summary judgment must be reversed. Under the circumstances Gilles remained in police custody throughout her encounter with Repicky and the New York state police. As the law was clearly established that Gilles had a constitutional right to be free from arrest without probable cause, as well as a constitutional right to be free from unreasonably prolonged or intrusive investigative detention, and Repicky has not demonstrated that it was objectively reasonable for him to believe that his conduct did not violate these rights, he is not entitled to the protection of qualified immunity at summary judgment.

## CONCLUSION

The district court's February 16, 2006 judgment dismissing Gilles' § 1983 action is vacated, and the case is remanded for further proceedings consistent with this opinion.

13