09-1453-cv
Norton v. Town of Islip

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 25th day of May, two thousand and ten.

PRESENT:

> JOSÉ A. CABRANES,
> ROBERT A. KATZMANN,
>     *Circuit Judges*,
> J. GARVAN MURTHA,
>     *District Judge*.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HOWARD NORTON,

> *Plaintiff-Counter-Defendant-Appellee*,

v.                                              No. 09-1453-cv

TOWN OF ISLIP, et al.,

> *Defendants-Counter-Claimants-Appellants*,

County of Suffolk,

> *Defendant*.

---

[*] The Honorable J. Garvan Murtha, Senior Judge of the United States District Court for the District of Vermont, sitting by designation.

1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLEE:**

RICK OSTROVE (Matthew Marks, *on the brief*), Leeds, Morelli & Brown P.C., Carle Place, New York.

**FOR DEFENDANTS-COUNTER-CLAIMANTS-APPELLANTS:**

ROBERT M. CALICA, Rosenberg Calica & Birney LLP, Garden City, New York (Erin A. Sidaras, Assistant Town of Islip Attorney, Islip, New York, and Edward M. Ross and Judah Serfaty, Rosenberg Calica & Birney LLP, Garden City, New York, *on the brief*).

Appeal from a March 27, 2009 order of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the District Court's order is **REVERSED** in part and the cause is **REMANDED**.

Because this action presents an unusually complicated background, we briefly summarize the relevant facts and procedural history. We assume the parties' familiarity with the remaining facts and procedural history.

In 1986, plaintiff-counter-defendant-appellee Howard Norton ("plaintiff") purchased a house at 725 Ferndale Boulevard in the Town of Islip, New York (the "Town"). *Norton v. Town of Islip*, No. 04-cv-3079, 2009 WL 804702, at *1 (E.D.N.Y. Mar. 27, 2009). Under the Town's zoning ordinances, the owner of the house was required to use it as a "single-family detached dwelling[ ]." *Id.* Nonetheless, the house had been converted into a two-family dwelling, and the Town had acknowledged that the house constituted a "legal nonconforming use." *Id.* Indeed, when plaintiff purchased the home, the Town's records contained a "certificate of occupancy" that certified the house as a "legal nonconforming two-family dwelling." *Id.* Plaintiff relied on that certificate when he purchased the house. *Id.*

Two years later, in 1988, plaintiff wished to rent the house and applied for a rental permit from the Town. The Town denied the permit on the ground that the house had lost its "legal nonconforming" status after it had been left vacant for a year. Plaintiff brought an Article 78 petition in New York Supreme Court to challenge the City's denial of the permit. *Id.* at *2. The Supreme Court denied the petition but declined to determine whether the house was—or was not—a legal nonconforming two-family dwelling. *Id.*

2

"[S]ometime" in 1990, after the conclusion of the Article 78 hearing, the Commissioner of the Town's Department of Building and Engineering (the "Commissioner") made several notations on the house's certificate of occupancy in the Town's files. *Id.* at *3. The Commissioner's notations described the denial of the rental permit and the fact that the denial of the permit had been "sustained" in the Article 78 proceeding. The Commissioner's notations also concluded, without elaboration, that the house's "non-conforming use" had been "lost due to non-use in excess of one consecutive year." *Id.* at *2. Plaintiff was not informed that the Commissioner had made those notations, nor was plaintiff provided an opportunity to challenge the Commissioner's conclusion that the "non-conforming use" had been "lost."

In March 1997, the Town Attorney's Office brought a criminal action against plaintiff charging him with violating the Town Code by using the house as a two-family dwelling. *Id.* The charging instrument claimed that the "last issued" certificate of occupancy established that the house could not be used as a two-family dwelling. *Id.*

Six months later, in September 1997, an Assistant Town Attorney provided to plaintiff's counsel a copy of the purported "last issued" certificate of occupancy. *Id.* The certificate in question was unsigned and undated, and it was stamped "DEPT. COPY." (We subsequently refer to this certificate as the "Department Copy Certificate.") The Department Copy Certificate also contained the Commissioner's notations, including his conclusion that the legal nonconforming use had been "lost." The next month, the Town produced a new certificate of occupancy that was signed and dated October 21, 1997. This new certificate also included the Commissioner's notations. *Id.* at *3.

Plaintiff then brought an action in the District Court under 42 U.S.C. § 1983 claiming that his rights under the Due Process Clause of the Fourteenth Amendment had been violated insofar as the Town—acting through the Commissioner—concluded in his notations on the certificate of occupancy that the house's legal nonconforming use had been "lost." With the consent of the Town, the criminal proceeding against plaintiff was stayed pending the outcome of the § 1983 action. *Id.*

In 2003, the District Court held that the Town had, in fact, violated the Due Process Clause by failing to provide plaintiff notice and an opportunity to challenge the Commissioner's conclusion on the certificate of occupancy. The Court granted plaintiff's request for a declaratory judgment and declared that a certificate of occupancy that had been issued in 1990 (before the Commissioner had made his notations) was now to be considered the operative "last filed" certificate of occupancy. *Norton v. Town of Islip*, 239 F. Supp. 2d 264, 276 (E.D.N.Y. 2003), *aff'd*, 77 Fed. App'x 56, 56-57 (2d Cir. 2003) (summary order).

3

As a result, the operative "last filed" certificate of occupancy now "expressly certified the [house] as a legal nonconforming dwelling and permitted its use as a two-family home." *Norton*, 2009 WL 804702, at *3. That undermined the Town's criminal allegations against plaintiff, and the Suffolk District Court dismissed the criminal charges. *Id.* at *4.

Norton then brought this action in the District Court. Unlike his first action in the District Court, which challenged the legality of the Commissioner's notations on the certificate of occupancy, Norton now brings claims in connection with the criminal proceeding instituted against him. In particular, Norton brings claims under 42 U.S.C. § 1983 and state law alleging malicious prosecution and malicious abuse of process on the part of several of the Town's attorneys and investigators. (We refer to those defendants as the "individual defendants.") *Id.* at *5. Norton also brings claims against the Town and the County of Suffolk (the "County") under *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978).

Submitting the record created in the first § 1983 action, the individual defendants moved for summary judgment in the District Court arguing, among other things, that they were entitled to either absolute immunity or qualified immunity. With respect to plaintiff's claims under federal law, the District Court granted absolute immunity to several of the individual defendants but denied both absolute and qualified immunity to the remaining individual defendants. (We sometimes refer to the individual defendants who were not granted immunity as the "remaining individual defendants.") The District Court did not discuss whether defendants were immune from plaintiff's state-law claims. The District Court also denied summary judgment to the City and the County with respect to plaintiff's *Monell* claims. *See Norton*, 2009 WL 804702, at *7-29.

All defendants except the County then brought this interlocutory appeal arguing (1) that the District Court erred by declining to grant qualified immunity to the remaining individual defendants, (2) that the District Court erred by failing to address whether the individual defendants are entitled to immunity with respect to plaintiff's state-law claims, and (3) that the District Court erred by failing to grant summary judgment to the Town with respect to plaintiff's *Monell* claims.

We have jurisdiction over the District Court's denial of qualified immunity insofar as that denial "turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Kelsey v. County of Schoharie*, 567 F.3d 54, 60 (2d Cir. 2009). We have pendent jurisdiction over the other aspects of the District Court's decision only insofar as they are "'inextricably intertwined'" with the District Court's immunity ruling or "'necessary to ensure meaningful review'" of that ruling. *Bolmer v. Oliveira*, 594 F.3d 134, 141 (2d Cir. 2010) (quoting *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008)).

**I.     Qualified Immunity With Respect to Plaintiff's Federal-Law Claims**

A government official is entitled to qualified immunity "if it was objectively reasonable for the [official] to believe that his conduct did not violate" a " constitutional right." *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007). "The qualified immunity test is an objective one." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007). It looks to the circumstances confronting an official, not to the official's "subjective intent." *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The principal question is whether "'[officials] of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Thus, to establish that they are entitled to qualified immunity in this action, the individual defendants need not demonstrate that there was, in fact, probable cause to prosecute plaintiff. Instead, the individual defendants need only demonstrate that it would have been objectively reasonable for officials in their position to *believe* that there was probable cause for the prosecution. *See Norton*, 2009 WL 804702, at *24.

It is undisputed that the individual defendants were confronted with two items of information at the time they chose to prosecute plaintiff. First, the individual defendants had the Department Copy Certificate—the unsigned and undated certificate of occupancy marked "DEPT. COPY"—that contained notations explaining that the house's legal nonconforming use had been "lost." *Id.* at *2. Second, a Town investigator had visited the house to confirm that it was being used as a two-family dwelling. *See id.* at *15.

We have no trouble concluding that it would have been "objectively reasonable" to believe, *Gilles*, 511 F.3d at 244, based on those two items of information, that there was probable cause to commence a criminal prosecution against plaintiff. Although the notations on the Department Copy Certificate were, after several years of litigation in the District Court, eventually held to violate the Due Process Clause, it was by no means clear that those notations suffered from any constitutional defect at the time the individual plaintiffs commenced the criminal proceeding. Therefore, although it would have been a mistake for the individual defendants to rely on those notations as a basis for probable cause, it would, at the time, have been a "reasonable mistake[]." *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *see also Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) ("[Q]ualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." (internal quotation marks omitted)).

Furthermore, even though the Department Copy Certificate was unsigned and undated, it is undisputed that the Department Copy Certificate was an "unofficial copy" of the certificate that would have "appear[ed] exactly as the original appear[ed]." J.A. 400 (Dep. of Carl Maltese, Nov. 13,

5

2000, at 61). Therefore, the individual defendants would have had no reason to doubt that the Department Copy Certificate was an accurate facsimile of the operative certificate of occupancy located in the Town's files.

It was, therefore, objectively reasonable for the individual defendants to believe (1) that the house's legal nonconforming use had been "lost," (2) that plaintiff was nonetheless using the house as a two-family dwelling, and thus (3) that there was probable cause to prosecute plaintiff for a violation of the Town Code.

Plaintiff argues the qualified immunity question turns on issues of fact and that he needs discovery in this action to uncover evidence that the individual defendants acted out of a bad faith intent to prosecute him. Such issues of fact, however, are irrelevant to the qualified immunity inquiry, because mere assertions of bad faith "do[] not reintroduce into qualified immunity analysis" an "inquiry into officials' subjective intent." *Anderson*, 483 U.S. at 641. Rather, the only question here is "the objective (albeit fact-specific) question whether a reasonable [official] could have believed" the prosecution of plaintiff "to be lawful, in light of clearly established law and the information the [officials] possessed." *Id.*

Here, examining the undisputed facts about what "information" the individual defendants "possessed," it is clear, as a matter of law, that their decision to prosecute plaintiff was objectively reasonable. Plaintiff's bald assertions of bad faith do not alter that analysis and thus do not create issues of *material* fact or demonstrate a need for discovery.

In sum, based on undisputed facts in the record, the remaining individual defendants—that is, those individual defendants who were not granted immunity by the District Court—are entitled to qualified immunity with respect to plaintiff's federal-law claims.

## II.    Immunity With Respect to Plaintiff's State-Law Claims

The District Court did not discuss whether the individual defendants are entitled to immunity with respect to plaintiff's state-law claims. Plaintiff argues that the individual defendants failed to move for summary judgment on that ground; the individual defendants argue that they did, in fact, seek immunity with respect to the state-law claims in their motion for summary judgment.

In light of this confusion, and without any discussion of the issue by the District Court, we remand to the District Court to address, in the first instance, the individual defendants' argument that they are entitled to immunity with respect to plaintiff's state-law claims. The District Court may address whether the individual defendants failed to raise that argument in their motion for summary judgment. We intimate no view on the issue.

6

**III.**    *Monell* **Claims Against the Town**

Finally, the Town argues that "[a]ll of the remaining claims against the Town, including plaintiff's declaratory judgment claims, are premised on plaintiff's federal and state malicious prosecution claims." Appellants' Br. 60. Thus the Town claims that, if we conclude that the individual defendants are entitled to qualified immunity, "plaintiff's claims against the Town should likewise be dismissed." *Id.*

The individual defendants' reasoning on this point, which occupies a mere two paragraphs of their 61-page brief, is far from clear. In any event, we lack jurisdiction to review the District Court's denial of summary judgment with respect to the claims against the Town unless the issues raised by that denial are "'inextricably intertwined'" with the District Court's immunity rulings. *Bolmer*, 594 F.3d at 141 (quoting *Ross*, 547 F.3d at 142). Accordingly, rather than risk a decision on an issue that is poorly briefed and that may exceed our jurisdiction, we remand the cause to the District Court to reassess the claims against the Town in light of our holding that the individual defendants are entitled to qualified immunity with respect to plaintiff's federal-law claims.

## CONCLUSION

For the foregoing reasons, the District Court's March 27, 2009 order is **REVERSED** in part and the cause is **REMANDED** for further proceedings consistent with this order.

FOR THE COURT,

Catherine O'Hagan Wolfe, Clerk of Court

7