Judge STRAUB dissents with a separate opinion.
DENNIS JACOBS, Chief Judge:
Defendant Thomas Dunn, mayor of the Town of Wolcott, appeals from the denial of his motion for qualified immunity by the United States District Court for the District of Connecticut (Droney, /.). When Dunn became mayor, he terminated the employment of plaintiff Denise Taravella, who had been the director of the town’s senior center. Taravella sued Dunn, Town Municipal Agent Douglas Coley, and the Town itself, alleging a variety of federal constitutional and state law violations. The defendants moved for summary judgment on all claims, and the district court initially [1] granted the motion as to speech, association, and defamation claims pleaded under 42 U.S.C. § 1983; [2] denied the motion as to the § 1983 procedural due process claim; and [3] reserved decision on the state claims. On reconsideration, the district court granted Coley’s motion for summary judgment on ground of qualified immunity but denied Dunn’s motion, ruling that questions of fact regarding Taravella’s employment contract precluded a ruling on qualified immunity with regard to Taravella’s procedural due process claim. On appeal, Dunn argues that he is entitled to qualified immunity because his conduct was objectively reasonable in light of the facts before him. We agree, and therefore reverse.
BACKGROUND
Denise Taravella was hired by then-Mayor Michael DeNegris as Senior Center Director of the Town of Wolcott Senior Center in August, 2002. In a meeting with DeNegris and Kimberly Hunt, the Town’s personnel director, Taravella signed a Letter of Benefits Agreement (“the Agreement”) that established the terms of her employment for a one-year period. (Taravella signed a substantially identical agreement in October 2003.) The Agreement specified terms relating to compensation, work hours, vacation and holidays, sick and personal leave, and pension plan participation. The Agreement also stated that Taravella’s health benefits and funeral leave would match the benefits enjoyed by the town’s unionized employees. As to termination, the Agreement provided that Taravella could terminate her employment for any reason on ten days’ notice, and *132 that the Town could terminate Taravella’s employment for disciplinary reasons on ten days’ notice.
Taravella alleges that she was also told during the August 2002 meeting that she “would have everything that the [Town’s] union employees had,” including — she argues — the right not to be terminated without cause and the right to a pre-termination hearing. But Taravella concedes that she never received such a promise in writing, and it is undisputed that Dunn was never made aware of this alleged promise.
Dunn defeated DeNegris in the Town’s November 2003 mayoral election. On assuming the mayoralty, Dunn began to receive complaints regarding Taravella’s conduct as director of the Senior Center. In March 2004 — after consulting with Town Attorney Bryan Tynan — Dunn and Coley met with Taravella to terminate her employment. During the meeting, which lasted roughly ten minutes, Dunn read a letter explaining that Taravella’s employment was to be terminated in ten days’ time because of complaints from town seniors. The parties dispute whether Taravella asked for a hearing, or whether Dunn told Taravella to request a hearing if she wanted one. But it is undisputed that Dunn sent Taravella a letter the next day stating that she was not entitled to a pre-termination hearing because she was not a union employee. Taravella made no subsequent request for a hearing.
Taravella filed suit in June 2004, alleging fifteen causes of action, including violations of her Fourteenth Amendment procedural due process rights and her First Amendment rights to free speech and association. She also alleged defamation in violation of her Fourteenth Amendment liberty interests, as well as various state statutory and common law violations.
The defendants moved for summary judgment on all counts. The district court granted the motion as to Taravella’s First Amendment speech and association claims and her Fourteenth Amendment defamation claim, and reserved decision as to Taravella’s state claims. Taravella v. Town of Wolcott, No. 3:04cv895, 2008 WL 747668 (D.Conn. March 18, 2008) (Ruling on Motion for Summary Judgment). But the district court denied the motion as to Taravella’s procedural due process claim, ruling that “ambiguous terms in the Agreement created a material question of fact as to whether Taravella could only be terminated for just cause,” which would entitle her to a pre-termination hearing. Id. at *5.
The defendants moved for reconsideration on the ground that the district court had not addressed their claim to qualified immunity. The district court granted reconsideration and, on reconsideration, granted Coley’s summary judgment motion on the basis of qualified immunity. Taravella v. Wolcott, No. 3:04cv895, 2008 WL 1821507 (D.Conn. April 22, 2008) (Ruling on Motion for Reconsideration). The district court determined that Coley was entitled to qualified immunity because his conduct had been objectively reasonable. Id. at *4. But the court concluded that “material questions of fact concerning defendant Dunn’s conduct require resolution by a jury, and preclude granting him summary judgment on the basis of qualified immunity.” Id. at *3. Specifically, the court ruled that because the parties disputed Taravella’s entitlement to a pre-termination hearing, a question of fact existed which had to be resolved by a jury before the reasonableness of Dunn’s conduct could be determined. Id. In addition, the court ruled that Dunn’s reliance on the advice of the Town Attorney did not entitle him to qualified immunity. Id. The court *133 therefore denied Dunn’s motion for summary judgment.
This appeal followed.[1]
DISCUSSION
We review the district court’s summary judgment decision de novo. Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir.2008). Summary judgment is appropriate if “there is no genuine issue as to any material fact” and “the movant is entitled to judgment as a matter of law.” Fed.R.CivJP. 56(c).
I
“Qualified immunity protects officials from liability for civil damages as long as ‘their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir.2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown “make out a violation of a constitutional right,” and “whether the right at issue was clearly established at the time of defendant’s alleged misconduct.” Pearson v. Callahan, — U.S.-, 129 S.Ct. 808, 815-16, 172 L.Ed.2d 565 (2009).[2]
To be clearly established, “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). An official is therefore entitled to immunity if his action was “objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.” X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir.1999) (citing Anderson, 483 U.S. at 639, 107 S.Ct. 3034) (quotation marks and alterations omitted).
II
In considering an official’s qualified immunity claim, a court “must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.” Pearson, 129 S.Ct. at 815-16. Here, Taravella alleges a violation of her Fourteenth Amendment procedural due process rights. “To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, we must ... identify the property interest involved.” O’Connor v. Pierson, 426 F.3d 187, 196 (2d Cir.2005). This involves a two-step process. “First, we must determine whether some source of law other than the Constitution, such as a state or federal statute, confers a property right on the plaintiff.” Id. “Once such a property right is found, we must determine whether that property right ‘constitutes a property interest for purposes of the Fourteenth Amendment.’ ” Id. (citing Town of Castle Rock v. Gonzales, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005)).
*134 “In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause.” S & D Maintenance Co. v. Goldin, 844 F.2d 962, 967 (2d Cir.1988). Under Connecticut law, employment is at-will by default, and parties must specifically contract a right to be terminated only for cause. See Torosyan v. Boehringer Ingelheim Pharms., Inc., 234 Conn. 1, 14-15, 662 A.2d 89 (1995). An exception exists for contracts that create employment for a fixed period. See Slifkin v. Condec Corp., 13 Conn.App. 538, 538 A.2d 231, 236 (1988). Whether Taravella could be fired without cause is unclear. The Agreement between Taravella and the town contained ambiguous clauses regarding both term and termination. With regard to term, the Agreement provided that Taravella would be employed for one year (subject to renewal), but (as the district court explained) it also contemplated “the possibility of termination due to a mayoral administration change, which implies that the parties may not have intended to guarantee Taravella a full one year term of employment.” Taravella v. Town of Wolcott, No. 3:04cv895, 2008 WL 747668 at *6 (D.Conn. March 18, 2008) (Ruling on Motion for Summary Judgment). And with regard to termination, the Agreement contained language suggesting that while the town could only fire Taravella for cause, she could quit for any reason. Id.
As the district court observed, these ambiguities create a question of fact regarding whether Taravella could be fired without cause. But because, on a motion for summary judgment, “[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), we must credit Taravella’s allegation that she could not be fired without cause for purposes of the qualified immunity analysis. It follows that Taravella has sufficiently alleged the invasion of a property interest.
It is also clear that the alleged property interest is constitutionally protected. “[T]he state-law property interest of government employees who may only be discharged for cause ... is a constitutionally protected property interest for purposes of the Fourteenth Amendment,” O’Connor v. Pierson, 426 F.3d 187, 196 (2d Cir.2005) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Strong v. Bd. of Educ., 902 F.2d 208, 211 (2d Cir.1990)). As such, “[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer’s evidence, and an opportunity to present his side of the story.” Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). And because this principle has been clearly established since Loudermill, the second prong of the qualified immunity analysis would appear to be satisfied.
Ill
“[E]ven where the law is ‘clearly established’ and the scope of an official’s permissible conduct is ‘clearly defined,’ the qualified immunity defense also protects an official if it was ‘objectively reasonable’ for him at the time of the challenged action to believe his acts were lawful.” Higazy v. Templeton, 505 F.3d 161, 169-70 (2d Cir.2007). “[T]he matter of whether a defendant official’s conduct was objectively reasonable, i.e., whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact.” Kerman v. City of New *135 York, 374 F.3d 93, 109 (2d Cir.2004). “Although a conclusion that the defendant official’s conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder.” Id. (citations omitted).
We conclude that Dunn’s conduct was objectively reasonable as a matter of law. Taravella’s procedural due process right is alleged to arise from two sources: the Agreement she signed during her August 2002 meeting with DeNegris (and renewed the following year), and the (disputed) contemporaneous oral promise regarding union-like benefits. As to the latter, Taravella has conceded that Dunn neither knew nor had reason to know about the alleged oral promise. As to the former, the district court has concluded— and we agree — that the Agreement is ambiguous as a matter of law. Dunn read the Agreement, sought legal advice, and reasonably concluded that Taravella could be terminated without a hearing.[3] Because a reasonable mayor could understand the Agreement to provide that Taravella could be fired without a hearing, it cannot be said that Dunn acted unreasonably in doing so.
At oral argument, Taravella’s counsel argued that because there is an ambiguity in the Agreement regarding the entitlement to a hearing, a cautious person — and therefore a reasonable person — would afford a hearing. This is not the law; and if it were, the jury trial Taravella seeks would be unnecessary, since the very fact that Dunn acted adverse to Taravella in the face of the ambiguity would, under Taravella’s theory, demonstrate constitutionally unreasonable conduct.
Judge Straub’s dissent is in two parts. The first part questions why this Circuit analyzes qualified immunity by considering three questions rather than just two. Specifically, Judge Straub would only consider: (1) whether the facts plaintiff alleges establish a violation of a constitutional right and (2) whether this constitutional right was clearly established. Such a formulation would omit consideration of whether it was “objectively reasonable” for a defendant to believe his actions were lawful. The second part of Judge Straub’s opinion, which concerns the particulars of this case, illustrates why this third question is indispensable.
Judge Straub recognizes the employment contract is ambiguous as to whether Ms. Taravella had the right to a hearing before dismissal. And, he would remand for a finding (on extrinsic evidence) as to the intent of Mayor Dunn’s predecessor, in aid of answering the first inquiry, i.e., whether under the facts she alleged Taravella had a constitutional right to a hearing. However, the ambiguity of a contract is ascertainable as a matter of law, and we all conclude that this contract is ambiguous. Given the contract’s ambiguity and the standard — that we look at “whether a reasonable official would reasonably believe his conduct did not violate a clearly established right,” Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir.2004) — it cannot be said that the defendant acted unreasonably when he interpreted the ambiguous contract one way instead of another.
CONCLUSION
Although Taravella has alleged a violation of a constitutional right, and although *136 that constitutional right was clearly established at the time of the alleged violation, Dunn’s conduct was objectively reasonable in light of the information he had. We therefore reverse the district court’s denial of Dunn’s summary judgment motion on grounds of qualified immunity.

. It is well established that a denial of an official’s motion for summary judgment on grounds of qualified immunity, to the extent it turns on an issue of law, constitutes an immediately appealable decision. See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65 (2d Cir.1999).

. Pearson overruled the Court’s prior holding, in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), that courts had to proceed through the two-step inquiry in a particular order. 129 S.Ct. at 818. The Court recognized, however, that the traditional sequence "is often appropriate.” Id.

. We need not decide whether reliance on legal advice constitutes an "extraordinary circumstance" sufficient by itself to give rise to qualified immunity, see Sampson v. City of Schenectady, 160 F.Supp.2d 336, 350 (N.D.N.Y.2001), because at the very least the solicitation of legal advice informs the reasonableness inquiry-