**Paul T. MANZA, and Domar Homestead, L.L.C., Plaintiffs,**

v.

**Michael NEWHARD, in his individual and official capacity as Mayor of the Village of Warwick, County of Orange, State of New York, and The Village of Warwick, Defendants.**

**No. 10 CV 8892(VB).**

United States District Court, S.D. New York.

Jan. 15, 2013.

---

Steven Jay Spiegel, Spiegel Legal, LLC, Florida, NY, for Plaintiffs.

Stephen Joseph Gaba, Drake, Loeb, Heller, Kennedy, Gogerty, Gaba & Rodd, PLLC, New Windsor, NY, for Defendants.

BRICCETTI, District Judge.

Paul T. Manza and Domar Homestead, LLC, bring this Section 1983 action against Michael Newhard in both his individual capacity and his official capacity as the Mayor of the Village of Warwick, New York, and also against the Village of Warwick. Plaintiffs allege violations of their substantive and procedural due process rights in connection with the termination of water service to their property. Now pending is defendants' motion for summary judgment. (Doc. # 45.)

For the following reasons, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The parties have submitted briefs, statements of facts, affirmations, and declarations with supporting exhibits that reflect the following factual background.

The Village of Warwick maintains a central water service system through which it provides water to Village residents and others. For over 130 years, pursuant to deeded property rights, the Village provided water free of charge to property at 21 Hathorn Road/12 County Route 1A in the Town of Warwick (the "property").

On September 8, 1980, then-Village attorney Bernard I. Kunert sent a letter to then-Village Mayor John P. McGrath concerning ancient deeds given to the Village with respect to portions of the property conveyed to the Village which the Village needed to build its water system. Those deeds reserved rights for the grantors to receive water free of charge. Kunert opined that the right to receive water free of charge was limited and that certain conditions to receiving free water were not met. Thus, in his opinion, the current users of the property were not entitled to free water. Although it was Kunert's opinion that under one of the deeds users subsequent to the original grantors should pay for the use of Village water, he also stated a court determination would be

needed to determine what the actual intent of the parties was at the time the deed was delivered.

Nearly thirty years later, Village attorney Michael D. Meth also reviewed the ancient deeds. Meth reached the same conclusion; namely, that users subsequent to the original grantors should pay for the use of Village water. His opinion omitted any reference to the need for a court determination regarding the intent of the parties at the time the original deed was delivered. He conveyed his opinion to Mayor Newhard by letter dated July 29, 2008.

Following Meth's letter, on December 15, 2008, the Village issued a bill for water service at the property. At the time, Manza contends he owned a beneficial interest in the property in the form of a ground lease. Nearly one year later, the property was conveyed to Domar Homestead, LLC, of which Manza is the sole managing member.

Defendants contend they sent Manza "Delinquent Notice" bills on both January 16 and February 18, 2009. The latter notice warned that payment was required to "Avoid A Shut–Off." Plaintiffs dispute these facts, and defendants have provided no documents confirming either the contents of these notices or that they were actually sent.

The parties agree, however, no payment was ever made.

The Village employs a water billing clerk who maintains accounts for recipients of water service, issues bills, and processes payments. This clerk has authority to remedy clerical billing errors. Water bills include a telephone number to reach this clerk in the event there is a question or complaint about the bill. The clerk refers all non-clerical billing problems to the appropriate Village official.

Manza called the number for the Village water clerk that was provided on the December water bill. He explained his objection to the bill based on his deeded property rights, and was asked to explain the problem in person at Village Hall. After a discussion at Village Hall, he was referred to Mayor Newhard.

In February 2009, Manza met with Mayor Newhard. Manza informed him that he objected to paying the water bill because he had "deeded rights to free water."

Mayor Newhard consulted Village attorney Meth, who reissued his opinion letter concerning the right to receive water at the property. On March 5, Mayor Newhard sent a letter to Manza stating that, based on Meth's opinion, the Village rejected Manza's objection to paying for water. The letter enclosed a copy of Meth's opinion. The letter also noted the Village had not received payment on its first bill and that if payment were not received in a timely manner, the Village would be "forced to discontinue service."

On March 9, Manza responded by email to Mayor Newhard. Manza stated he would pay for water from the date of meter installation forward if his attorney and the Village attorney, or the appropriate court, determined that Manza was obligated to pay for water.

At some point in March, Manza met again with Mayor Newhard along with Arthur Wendel, the Village Water Plant Operator, Steven Sisco, the Village Department of Public Works Supervisor, and others. At that meeting, the parties discussed an alleged leak in the water lines at the property as well as Manza's objection to being billed for water service.

The record amply supports defendants' assertion as to the topics discussed at the March 2009 meeting. Indeed, in his Arti-

cle 78 Verified Petition, discussed below, Manza swore to the following facts

The seemingly most productive of these meetings took place in March 2009, at Mayor Newhard's office at Village Hall in the Village of Warwick.... At this meeting, Petitioner believed that he had reached an understanding with Respondents to (a) cooperate in finding and in helping to fix the alleged leak, without Petitioner accepting any responsibility for the leak, and (b) participate in a judicial determination of Petitioner's water rights, if Respondents felt that these deeded rights were no longer applicable. Apparently, though, these meetings were of no consequence or import to the Respondent Mayor. Notwithstanding Petitioner's assertions of longstanding deeded property rights to Village water free of charge, Respondents Mayor Newhard and the Village of Warwick failed to reconsider its *fait accompli* decision.

In light of this admission as to the topics discussed at the March 2009 meeting,[1] the Court construes plaintiffs' argument that Manza was denied an opportunity to present arguments and proof, especially regarding the decision to begin billing, as a purely legal argument that he was denied a meaningful opportunity to be heard.

By letter dated March 12, 2009, the Village's Code Enforcement Officer, Daniel Kelly, informed Manza that the matter of deeded water rights had been referred to him, and that the Village of Warwick, based on the opinion of its attorney, required Manza to pay for water usage. Kelly also informed Manza that the Village would continue to provide Manza with water for sixty days, to afford Manza time to pursue his legal options. Kelly warned that if the Village's decision were not overturned by an authority granted by law to do so by the end of the sixty days, then the Village would shut off water because of nonpayment.

On April 20, 2009, Kelly sent another letter to Manza inquiring as to whether Manza planned to bring an action appealing the Village's decision to demand payment.

On June 18, 2009, more than ninety days after Kelly's March letter, the Village terminated water service to the property. That same day Manza's attorney wrote a letter to Mayor Newhard expressing his opinion that the Village was obligated to provide water to the property free of charge, and requesting the Village seek judicial review of its decision before terminating service.

On August 24, 2009, Manza commenced an Article 78 proceeding in Orange County Supreme Court against the Village and others challenging the termination of water service.

On September 30, 2009, the Village resumed water service.

On November 12, 2009, plaintiff Domar Homestead, LLC, purchased the property. Defendants contend that before Domar's purchase, Domar had no right, title or interest in the property. Plaintiffs contend Domar was assigned all rights to the claims of the previous owner as its successor-in-interest, and therefore had an interest in the property.

On July 16, 2010, Acting Supreme Court Justice Lori Currier Woods rendered a decision in the Article 78 action. The court granted the Article 78 petition holding "the language of the deeds by con-

---

1. The Court notes, additionally, that in their response to defendants' Rule 56.1 statement, plaintiffs did not dispute these topics were discussed at the March 2009 meeting. (*See* para. 22). Thus, the Court also deems these facts admitted pursuant to Local Rule 56.1.

struction of its express terms require that the subject property receive water free of charge to the extent of farm purposes and the residence mentioned in the September 24, 1908 deed. Neither new building structures nor non farm related activities are subject to this grant." *Manza v. Wendal,* Decision & Order, No. 9372/2009, slip op. at 10 (N.Y. Sup.Ct. Orange Cnty. July 16, 2010).

Plaintiffs commenced this action on November 24, 2010. By order dated May 3, 2011, 2011 WL 10565590, this Court[2] granted defendants' motion to dismiss the complaint. On appeal, the Second Circuit affirmed in part, but vacated the dismissal of plaintiffs' Fourteenth Amendment procedural due process claim insofar as the decision did not address whether Manza received sufficient predeprivation due process before the Village terminated water service to the property. *Manza v. Newhard,* 470 Fed.Appx. 6, 9 (2d Cir.2012). Defendants now move for summary judgment asserting Manza was afforded sufficient pre-deprivation due process as a matter of law.

## DISCUSSION

### I. *Legal Standard*

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.,* 625 F.3d 54, 60 (2d Cir.2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't,* 613 F.3d 336, 340 (2d Cir.2010).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548. If the nonmoving party submits evidence which is "merely colorable," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir.2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. *Dawson v. Cnty. of Westchester,* 373 F.3d 265, 272 (2d Cir.2004).

On summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. *Nagle v. Marron,* 663 F.3d 100, 105 (2d Cir.2011). If there is any evidence from which a reasonable in-

2. Honorable J. Frederick Motz, United States District Judge for the District of Maryland, sitting by designation.

ference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir.2004).

## II. *Rule 56(d)*

Plaintiffs oppose summary judgment in part on the ground that the parties have not engaged in discovery. Specifically, they argue in their memorandum of law opposing summary judgment that additional facts concerning both the alleged leak in the water lines and the agenda of the March 2009 meeting are needed to oppose defendants' motion for summary judgment.

▪ Pursuant to Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." A party seeking discovery under Rule 56(d) must file an affidavit that describes "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Shaheen v. Naughton*, 222 Fed.Appx. 11, 13 (2d Cir.2007) (citing *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir.2004)).

Plaintiffs did not submit an affidavit in support of their Rule 56(d) request. Thus, the application is denied on this basis alone. However, even considering the arguments in their memorandum of law, plaintiffs failed to demonstrate that additional facts concerning either the alleged leak in the water lines or the March 2009 meeting agenda are essential to justify their opposition to defendants' motion for summary judgment.

▪ The issue of whether there was in fact a water leak on the property is irrelevant to whether plaintiffs received adequate pre-deprivation due process before the Village terminated water service to the property. Although the agenda for the March 2009 meeting is arguably relevant insofar as it relates to whether Manza was afforded an opportunity to be heard concerning the disputed bill, the topics discussed at the meeting are, in fact, not in dispute. Moreover, because Manza was present at the meeting, he has the requisite personal knowledge to present facts sufficient to oppose the motion for summary judgment without taking discovery from defendants.

Plaintiffs further argue the Second Circuit directed the parties to proceed to discovery. The Court disagrees. When the court of appeals declined to accept defendants' argument that Manza was afforded sufficient process through numerous meetings with Village officials, the court explained that it could not make that finding because defendants were relying on facts that were not established as a matter of law from the complaint or the documents attached thereto. The court did not direct defendants to take discovery; rather, it left open the possibility that defendants could support their argument on summary judgment when the district court is permitted to review facts outside the complaint. The court of appeals suggested defendants could adduce further evidence in support of that argument through discovery, but it did not require that discovery be conducted. *Manza v. Newhard*, 470 Fed.Appx. 6, 10 (2d Cir.2012).

Because plaintiffs failed to meet the requirements of *Shaheen v. Naughton*, and failed to show by affidavit or declaration

that, for specified reasons, they cannot present facts essential to justify their opposition, plaintiffs' request for discovery is denied.

### III. Pre–Deprivation Procedural Due Process

■ To prevail on this claim, plaintiffs must show they possessed a protected property interest, and that they were deprived of that interest without due process. *McMenemy v. City of Rochester,* 241 F.3d 279, 285–86 (2d Cir.2001).

#### A. *Property Interest*

■ Property interests are created by an independent source, such as state law. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). Whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause is a question of federal law. *Id.*

Defendants contend plaintiffs do not have a property interest under New York law. For purposes of resolving this motion, the Court assumes, without deciding, that plaintiffs have a property interest under New York law that rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.

#### B. *Due Process*

■ Procedural due process requires notice and an opportunity to be heard prior to the deprivation of property. *New Windsor Volunteer Ambulance Corps v. Meyers,* 442 F.3d 101, 115 (2d Cir.2006). In *Memphis Light, Gas & Water Div. v. Craft,* the Supreme Court applied the balancing approach outlined in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to address what process is due before terminating or withholding an essential service, such as water service. The Court determined that a utility must (1) notify the customer of "the availability of a procedure for protesting a proposed termination of utility service," *id.* at 14–15, 98 S.Ct. 1554, and (2) provide "some administrative procedure for entertaining customer complaints prior to termination [ ] to afford reasonable assurance against erroneous or arbitrary withholding of essential services." *Id.* at 18, 98 S.Ct. 1554.

■ The procedure for entertaining customer complaints, however, need not be onerous "[t]he opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a 'due process hearing' in appropriate circumstances." *Manza v. Newhard,* 470 Fed.Appx. at 9 (quoting *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 16 n. 17, 98 S.Ct. 1554); *see also Locurto v. Safir,* 264 F.3d 154, 173–74 (2d Cir.2001) (pre-termination hearing for public employee can be "very limited"). Further, the opportunity for a meeting "could be afforded well in advance of the scheduled date of termination," *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 18, 98 S.Ct. 1554, and a "public utility enjoys a broad discretion in the scheduling and structuring of this 'hearing,' provided that the customer is afforded adequate time for effective presentation of his complaint prior to termination." *Id.* at 18 n. 22, 98 S.Ct. 1554. Also, due process does not necessarily require a neutral adjudicator. *See Locurto v. Safir,* 264 F.3d at 174 (addressing due process in the employment context).

Although the Supreme Court in *Memphis Light, Gas & Water Div. v. Craft* concluded that the administrative procedure required could be informal and need not be burdensome, the Court did not have occasion to rule on whether this standard was met because the utility company did not actually provide its customers with a hearing before terminating their utility

service. Accordingly, in addressing the specifics of what process was afforded here, this Court has applied *Memphis Light, Gas & Water Div. v. Craft* and looked to the balancing approach in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for additional guidance.[3]

### C. *Defendants Provided Adequate Pre–Deprivation Due Process*

■ The Court concludes defendants provided adequate pre-deprivation due process by notifying Manza in the December 15, 2008, water bill whom to contact to dispute the bill, and then by affording Manza multiple informal opportunities in February and ·March 2009 to discuss the billing dispute with the persons empowered to correct mistakes well in advance of the termination of service in June 2009.

There can be no doubt plaintiffs have a substantial interest in the continuation of water service to the property, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. at 18, 98 S.Ct. 1554 ("Utility service is a necessity of modern life; indeed, the discontinuance of water or heating for even short periods of time may threaten health and safety."), and defendants' actions created some risk of an erroneous deprivation. Indeed, a court later determined the Village's position was wrong.

Under *Memphis Light, Gas & Water Div. v. Craft*, however, all that was required here was "[t]he opportunity for informal consultation with designated personnel empowered to correct a mistaken determination." 436 U.S. at 16 n. 17, 98 S.Ct. 1554. Manza received that opportunity. Manza met informally with Mayor Newhard in February and March to dispute his water bills, and the Mayor was empowered to correct water billing mistakes.[4] Additionally, Manza exchanged written correspondence with the Mayor and other Village officers. The fact that in hindsight the procedures used did not prevent an erroneous deprivation does not mean the procedures used were constitutionally inadequate. *See Baker v. Schriro*, 2011 WL 6026237, at *4 (E.D.N.Y. Dec. 2, 2011) ("The Due Process Clause does not prohibit erroneous deprivations of property; it requires that a person being deprived of property receive due process.").

Additionally, under *Memphis Light, Gas & Water Div. v. Craft*, the Village had broad discretion in scheduling and structuring these informal meetings, provided Manza was afforded an adequate time for effective presentation of his complaint prior to termination. *Id.* at 18 n. 22, 98 S.Ct. 1554. Here, there is no dispute Manza informed Mayor Newhard of the basis for his complaint at the first meeting in February 2009—namely, his "deeded rights to free water." Mayor Newhard then conferred with the Village's attorney who reexamined the deeds at issue and reached the opposite legal conclusion from Manza. In other words, the Village examined the evidence upon which Manza relied, and simply disagreed.

---

**3.** In *Mathews v. Eldridge*, the Court outlined three factors to be considered when determining what process is due "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335, 96 S.Ct. 893.

**4.** Under NYS Village Law § 4–400, the Mayor supervises all subordinate officers of the Village, which would include the Water Department Superintendent in matters such as termination of water service.

Even if Mayor Newhard, as perceived by Manza, was "intransigent and indifferent" at the February 2009 meeting, the record reflects Manza's objection was heard, the matter was investigated by an attorney, the Village disagreed, Manza was informed of the Village's decision, and Manza was given a copy of the Village attorney's opinion upon which Mayor Newhard relied. Manza then enjoyed an opportunity to respond in March 2009 at another informal meeting with Mayor Newhard and other Village officials, at which Manza's objection to being billed for water was discussed. Despite these exchanges in person and in writing, the Village concluded the amount billed was justly due. The Village then gave Manza an additional sixty days to pursue his legal options. Manza did not engage in further correspondence or commence any legal proceedings until after the Village terminated his water service.

The Court concludes, based on this record, that Manza was afforded adequate time for effective presentation of his complaint prior to termination, and requiring more under these circumstances would create a financial and administrative burden out of proportion to the interests at stake and the risk of an erroneous deprivation.[5]

### D. Plaintiffs Were Not Entitled To A Due Process Hearing Before The Village Issued A Water Bill

■ Plaintiffs contend there are genuine issues of material fact because Newhard stated in an affidavit submitted in the Article 78 proceeding that the decision to begin billing was final as of December 15, 2008, and no further administrative remedies were available to Manza thereafter. In other words, plaintiffs argue they were entitled to notice and an opportunity to be heard before the Village commenced billing because the issuance of a bill constituted a revocation of their deeded rights to free water.

The Court disagrees. The issuance of a water bill (as opposed to the termination of water service) did not deprive plaintiffs of that to which they were entitled—namely, water. Therefore, the availability of administrative remedies including a pre-deprivation hearing before the town·decided to issue its first bill is irrelevant.

### E. A Full Pre–Termination Evidentiary Hearing Was Not Required

■ Plaintiffs further contend they were denied an opportunity to be heard because the Village did not provide a full pre-termination evidentiary hearing, as required under *Goldberg v. Kelly*, 397 U.S. 254, 269–70, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In *Goldberg*, the court held that a pre-termination evidentiary hearing was required before the government could terminate welfare benefits.

The Court rejects plaintiffs' contention for several reasons. First, the Supreme Court decided *Memphis Light, Gas & Water Div. v. Craft* in 1978, after *Goldberg v. Kelly*, and, thus, could have held that a pre-termination evidentiary hearing of the type required in *Goldberg* was necessary. It did not. Instead, the Court gave utilities "broad discretion" to structure "some kind of hearing" involving a "meeting with a responsible employee empowered to resolve the dispute." 436 U.S. at 18–19, 98

---

**5.** Defendants argue Manza received adequate due process because he could have commenced a pre-deprivation Article 78 proceeding before the Village terminated water service. Because the Court concludes the informal meetings and exchanges Manza had with the Mayor were sufficient, the Court makes no ruling on defendants' additional argument concerning the availability of pre-deprivation Article 78 proceedings.

S.Ct. 1554. The Court further explained that the hearing should not "prove burdensome." *Id.* at 18, 98 S.Ct. 1554. A hearing of the type required in *Goldberg v. Kelly* would create a far greater burden than that described in *Memphis Light, Gas & Water Div. v. Craft.*

Moreover, the facts of *Goldberg* that formed the basis for the Court's decision are not present here. Unlike the termination of welfare benefits, the decision to terminate water service, although potentially posing serious health and safety concerns, did not render Manza immediately desperate or without the resources needed to seek redress. *See Goldberg v. Kelly,* 397 U.S. at 264, 90 S.Ct. 1011 (termination of welfare benefits denies recipient of means to live). Accordingly, the Court concludes that a pre-termination evidentiary hearing was not required. *See Lindsey v. Memphis, Light, Gas and Water,* 2010 WL 711267, at *5 (W.D.Tenn. Feb. 25, 2010) (concluding trial-like hearing not required under *Memphis Light, Gas & Water Div. v. Craft* ).

 In holding that a pre-termination evidentiary hearing was not required, the Court does not mean to suggest that a utility has unfettered discretion to structure a hearing that in practice amounts to no hearing at all. "[A] hearing in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument however brief, and, if need be, by proof, however informal." *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 16 n. 17, 98 S.Ct. 1554 (quoting *Londoner v. Denver,* 210 U.S. 373, 386, 28 S.Ct. 708, 52 L.Ed. 1103 (1908)). In the employment context when pretermination hearings may be "very limited," the Second Circuit has required notice of the charges, an explanation of the nature of the employer's evidence, and an opportunity for the employee to respond. *Locurto v. Safir,* 264 F.3d at 173–74.

 To the extent plaintiffs contend even these basic requirements were not met, the Court is not persuaded. Manza says he was not able to present arguments or proof to the Village at the March 2009 meeting. This argument, however, is belied by the evidence. There is no dispute the parties discussed the alleged leak in the water lines as well as Manza's objection to being billed. Manza does not point to any additional arguments he wished to raise at this meeting. Nor do plaintiffs set forth any facts demonstrating that Manza was prevented from speaking. There is also no dispute that the Village attorney examined Manza's proof (*i.e.* the deeds) and rendered an opinion upon which the Village relied. Thus, the fact that Manza did not bring an attorney to this meeting or cross-examine witnesses does not mean he was denied a meaningful opportunity to present his arguments or proof.

Plaintiffs also contend they were not afforded a meaningful opportunity to be heard because they could not confront or examine evidence, specifically, Mr. Kunert's 1980 letter opinion and unspecified evidence forming the basis of the alleged water leak.

The Kunert and Meth opinions were nearly identical except that Kunert had suggested a judicial determination would be necessary as to the intent of the parties drafting the deeds. Although Manza understandably would have liked to see Kunert's opinion, the Village only needed to provide an explanation of the nature of the Village's evidence, and the record reflects that Meth's opinion, not Kunert's opinion, provided the basis for the Village's position.

Similarly, with respect to the alleged water leak, the Court rejects Manza's contention that the Village needed to do any-

thing more than explain to him that the alleged leak formed part of the basis for the disputed bill. The purpose of the pre-termination hearing was not to resolve whether or not there was a water leak, it was to guard against mistakes by ensuring there were reasonable grounds for the decisions being made. *See Locurto,* 264 F.3d at 174. If, as Manza contends, there never was a water leak, and the Village created the water leak as a mere pre-text for its decision to bill, that issue could have been addressed in post-deprivation proceedings. *See* N.Y. C.P.L.R. § 7803(3); *see also Harris v. Mills,* 572 F.3d 66, 76 (2d Cir. 2009) ("Section 1983 is not a means for litigating in a federal forum whether a state or local administrative decision was arbitrary and capricious.").

IV. *Qualified Immunity*

Mayor Newhard, additionally, contends he is shielded from suit in his individual capacity by qualified immunity. The Court agrees.

 Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). A qualified immunity defense is established if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Tierney v. Davidson,* 133 F.3d 189, 196 (2d Cir.1998).

 "[T]he matter of whether a defendant official's conduct was objectively rea-sonable, i.e., whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact." *Taravella v. Town of Wolcott,* 599 F.3d 129, 134–35 (2d Cir.2010). "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder." *Id.*

Here, the law is clearly established that an individual has "a right to some pre-deprivation process before an essential service (even one provided for a fee) could be terminated." *Manza v. Newhard,* 470 Fed.Appx. at 10 n. 2 (citing *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978)). Therefore, the question is whether it was objectively reasonable for Mayor Newhard to have believed his actions did not violate the law.

 The Court concludes Mayor Newhard is protected by qualified immunity because it was objectively reasonable for him to believe the meetings and communications he had with Manza collectively provided Manza with both notice and a meaningful opportunity to be heard before the Village terminated water service. Importantly, Mayor Newhard's actions were informed by unequivocal legal advice he had recently received that Manza was not entitled to free water. The fact that that legal advice turned out to be wrong is immaterial. It was reasonable for Mayor Newhard to rely upon that legal advice, which necessarily shaped the manner and structure of the informal meetings he held with Manza. *See Taravella v. Town of Wolcott,* 599 F.3d 129, 135 (2d Cir.2010) (objectively reasonable for mayor to rely on legal advice that employee could be terminated without a

651

hearing). A reasonable mayor under these circumstances would certainly have reasonably believed two informal meetings with further correspondence was sufficient predeprivation process.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the pending motion (Doc. # 45) and close this case.

SO ORDERED: