11-4404-cv
Winfield, et al. v. Trottier

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: October 5, 2012     Decided: March 6, 2013)

Docket No. 11-4404-cv

- - - - - - - - - - - - - - - - - - - - -x

MARIE WINFIELD and JASON WINFIELD,

Plaintiffs-Appellees,

- v.-

DANIEL TROTTIER,

Defendant-Appellant,

AIMEE NOLAN, STATE OF VERMONT,

Defendants.

- - - - - - - - - - - - - - - - - - - - -x

Before:      JACOBS, Chief Judge, POOLER and HALL, Circuit Judges.

A police officer appeals the denial of qualified immunity by the United States District Court for the District of Vermont in a claim under 42 U.S.C. § 1983 alleging that he violated the Fourth Amendment rights of a motorist and her passenger when, while searching her car with her consent during a traffic stop, he read a piece of her mail.  We reverse.

MICHAEL B. KIMBERLY, Mayer Brown LLP, Washington, DC <u>for Appellees</u>.

MEGAN J. SHAFRITZ, Assistant Attorney General, (Jana M. Brown *on the brief*) *for*, William H. Sorrell, Attorney General for the State of Vermont <u>for Appellant</u>.

DENNIS JACOBS, <u>Chief Judge</u>:

Daniel Trottier ("Trottier"), a Vermont State Police officer, appeals from an order entered in the United States District Court for the District of Vermont (Reiss, <u>J.</u>), denying his motion for qualified immunity in a claim brought by motorist Marie Winfield ("Winfield") under 42 U.S.C. § 1983, alleging that Trottier violated her Fourth Amendment rights when, while searching her car with her consent during a traffic stop, he read a piece of her mail.

At issue is the scope of Winfield's consent to the search of her car, which is determined by looking at what a reasonable person would have understood by the exchange between Trottier and Winfield. We conclude that, while the scope of Winfield's consent was not limited to a search for any particular object of contraband, it did not extend to the text of her mail. However, since this right was not clearly established at the time of the search, Trottier is entitled to qualified immunity. We therefore reverse.

2

**BACKGROUND**

The district court found that the following facts were undisputed. On May 26, 2007, Winfield was driving north on Interstate 89 in Vermont, en route to visit her father in Montreal. Trottier, a state trooper, stopped her for driving twenty miles per hour over the limit, and was inspired to search the car by certain things he deemed suspicious: The passenger, Winfield's son Jason, avoided making eye contact with him; and Winfield was eating a Powerbar "in what he regarded as a hurried manner." Winfield v. Trottier, No. 5:08-cv-278, 2011 WL 4442933, at *1 (D. Vt. Sept. 21, 2011).

As Trottier was waiting for verification of Winfield's identity, he approached the car and asked, "Ms. Winfield, you don't have to if you don't want to, but while we're waiting, would you mind coming back here for a minute [behind the car] and talk[ing] to me for a second?" She got out and walked with Trottier to the back of her car while State Trooper Aimee Nolan arrived on the scene, as backup.

The following exchange ensued:

> **TROTTIER:** Listen, is there anything in there I should know about? You seemed awfully nervous when I was talking with you. . . . Your hand was shaking and you're--you had, like, a leg tremor going on. No?

**WINFIELD:** Not that I know of.

**TROTTIER:** Oh, Okay. Not that you know of, or there's nothing? It just kind of, you know, piqued my interest there.

**WINFIELD:** Really?

**TROTTIER:** Because when I was talking with you, you were shaking; your voice was shaking.

Winfield explained that she was "probably tired" because her daughter's high school graduation was the previous night. The conversation continued:

**TROTTIER:** Okay. Okay. There's nothing in there I should know about is there? No guns or money?

**WINFIELD:** You can look if you want.

**TROTTIER:** Oh you don't mind? Do you mind? No--no large sums of money in there or--no? Okay.

**WINFIELD:** Be my guest.

**TROTTIER:** Okay.

**WINFIELD:** You can look.

**TROTTIER:** Okay. Here. Hold on one second.

**WINFIELD:** Inside my trunk?

**TROTTIER:** Okay.

**WINFIELD:** I don't know [inaudable]--

**TROTTIER:** Here. Do me a favor, okay?

**WINFIELD:** I don't have anything.

**TROTTIER:** What's that?

**WINFIELD:** No, I don't have anything in there. My--

**TROTTIER:** Okay. Oh, just stay over here for a second. I don't want you to get run over. Do you mind?

**WINFIELD:** I was just going to pop my trunk.

**TROTTIER:** Oh, that's okay. Do you mind if I look through--do--do you mind? You don't mind? Okay. Do me a favor. Stand over here for me. You don't have anything on you we should know about, do you? No guns or bombs or anything like that?

4

>**WINFIELD:** [Inaudible.]
>**TROTTIER:** No?  Okay.

Id. at *2-3.

After patting down Jason (with his consent), Trottier searched the car.  Trottier, who admits he was not looking for anything in particular, found an envelope addressed either to or from a court, opened it,[1] and read what was inside.  It was a court document pertaining to the arrest of Winfield's husband "for possession," and a letter that Winfield had written to a judge.  Id. at *3 n.4.  After finishing the search and finding nothing, he issued a speeding citation and the Winfields proceeded on their way.

The Winfields sued, alleging, inter alia, violations of the Fourth Amendment's prohibition of unreasonable searches and seizures.  The district court concluded that "no reasonable understanding of the exchange between Ms. Winfield and Trooper Trottier could be construed as consent for Trooper Trottier to read Ms. Winfield's mail, regardless of to whom or from whom [the mail] was addressed."  Id. at *10.  The court denied qualified immunity because "[i]t was

---

[1] The record on appeal does not indicate whether Trottier unsealed the envelope.  The district court noted, in its findings of undisputed facts, that Trottier simply "removed from its envelope and read" the document inside.  Id. at *3.

5

well-established at the time of the search that '[i]t is a violation of a suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given.'" Id. at *11 (quoting United States v. McWeeney, 454 F.3d 1030, 1034 (9th Cir. 2006)) (second alteration in original)).

**DISCUSSION**

The Court reviews de novo a decision on a motion for summary judgment. Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 763 (2d Cir. 2002); see also Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Miller, 321 F.3d at 300. In assessing a motion for summary judgment, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment [was granted]." Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted).

**I**

"Qualified immunity protects officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In deciding qualified immunity, courts ask whether the facts shown [i] "make out a violation of a constitutional right," and [ii] "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (internal quotation marks omitted).

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In this way, qualified immunity shields official conduct that is "'objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.'" X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999) (alterations omitted) (quoting Anderson, 483 U.S. at 639);

7

see also Taravella v. Town of Wolcott, 599 F.3d 129, 134-35 (2d Cir. 2010).

**II**

Plaintiffs challenge appellate jurisdiction on the ground that the qualified immunity inquiry in this case turns on a question of fact: the reasonableness determination as to the scope of Winfield's consent.

We have appellate jurisdiction over this interlocutory appeal. "[A] district court's denial of a claim of qualified immunity, *to the extent that it turns on an issue of law*, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 529 (1985) (emphasis added). An appealable order therefore cannot turn on a district court decision as to "what occurred, or why an action was taken or omitted, but [must related to] disputes about the substance and clarity of pre-existing law." Ortiz v. Jordan, --- U.S. ---, 131 S. Ct. 884, 893 (2011); see also Britt v. Garcia, 457 F.3d 264, 271-72 (2d Cir. 2006).

**A**

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991).

As there are no disputed facts in this case, Plaintiffs' argument is essentially that an appeals court lacks jurisdiction over an interlocutory appeal that turns on a determination of reasonableness. But in other contexts, courts hold that reasonableness may be a question of law when the facts are undisputed. See, e.g., Kent v. Katz, 312 F.3d 568, 577 (2d Cir. 2002) ("[W]hen the defendant accepts . . . the plaintiff's version of the facts, the defendant may immediately appeal the denial of [a summary judgment] motion because the objective *reasonableness* of the undisputed actions may then be susceptible to resolution as a matter of law." (emphasis added) (citing Salim v. Proulx, 93 F.3d 86, 91 (2d Cir. 1996))); Huang v. Attorney Gen., 620 F.3d 372, 385 (3d Cir. 2010) ("[I]n the context of qualified immunity for constitutional torts, the reasonableness of a state actor's

9

conduct *based on undisputed facts* is subject to <u>de novo</u> review as a question of law." (emphasis added)); <u>Vaughn v. Ruoff</u>, 253 F.3d 1124, 1128 (8th Cir. 2001) ("If the material predicate facts are undisputed, the reasonableness inquiry is a question of law.").

Plaintiffs fail to cite a single case holding that an appellate court lacks jurisdiction to review a ruling on qualified immunity when the facts are undisputed.[2] Instead, they cite cases such as <u>Hatheway v. Thies</u>, 335 F.3d 1199, 1204 (10th Cir. 2003), in which the question was whether certain facts were disputed, and <u>Copar Pumice Co. v. Morris</u>, 639 F.3d 1025, 1027 (10th Cir. 2011), in which "[t]he parties provide[d] distinctly differing accounts of the ensuing encounter."

---

[2] Plaintiffs cite cases in which the scope of consent to search is a question of fact reviewed for clear error. <u>See</u> <u>United States v. Gandia</u>, 424 F.3d 255, 265 (2d Cir. 2005); <u>United States v. Garrido-Santana</u>, 360 F.3d 565, 570 (6th Cir. 2004); <u>United States v. Rosborough</u>, 366 F.3d 1145, 1150 (10th Cir. 2004). <u>Gandia</u>, the only Second Circuit case plaintiffs cite, turned on facts that were disputed. 424 F.3d at 265. Moreover, these cases were criminal cases in which the court set out the standard of review without touching on the question presented here, whether there is appellate jurisdiction to review a denial of qualified immunity involving the scope of consent.

In this case involving no disputed facts, we have appellate jurisdiction, under Mitchell v. Forsyth, 472 U.S. 511 (1985), to decide whether there was a violation of a constitutional right.

**B**

We also have appellate jurisdiction to decide whether the right at issue was "clearly established."  See Moore v. Andreno, 505 F.3d 203, 207 (2d Cir. 2007) ("Nevertheless, our appellate jurisdiction over this case is not in doubt. The district court's holding that the law governing third-party consent searches was clearly established is a conclusion of law and is thus immediately appealable."); Salim, 93 F.3d at 89 (finding it "easy to apply" Mitchell v. Forsyth "whenever a defendant's interlocutory appeal challenges a denial of a qualified immunity defense on the ground that the district court erred in ruling that the law the defendant is alleged to have violated was clearly established").

**III**

Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis

should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Here, we analyze both because it is "'difficult to decide whether [the] right [in this case] is clearly established without deciding precisely what the existing constitutional right happens to be.'"  Id. (quoting Lyons v. Xenia, 417 F.3d 565, 581 (6th Cir. 2005) (Sutton, J., concurring)).  We consider each qualified immunity inquiry in turn.

**A**

The Fourth Amendment is not offended by a warrantless, suspicionless search to which a suspect consents.  Florida v. Jimeno, 500 U.S. 248, 250-51 (1991).  In general, "an individual who consents to a search of his car should reasonably expect that readily-opened, closed containers discovered inside the car will be opened and examined." United States v. Snow, 44 F.3d 133, 135 (2d Cir. 1995).

"A suspect may of course delimit as he chooses the scope of the search to which he consents."  Jimeno, 500 U.S. at 252.  To determine the parameters of consent, we ask "what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  Id. at 251.

12

"The scope of a search is generally defined by its expressed object." Id. In Jimeno, a police officer who believed he overheard the defendant arranging an illegal drug transaction over a public telephone followed the defendant's car and pulled him over to give him a ticket when he made an illegal turn. Id. The officer then expressed his suspicion and asked, and was granted, permission to search the car for drugs. Id. at 249-50. A brown paper bag on the floor of the car was opened and yielded cocaine. Id. at 250. The Supreme Court held that the search was lawful: If a suspect's "consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." Id. at 252.

Here, Winfield's consent was not limited to a search for guns or money because Trottier's full question did not convey any "expressed object" of the search: "There's nothing in there I should know about is there? No guns or money?" The open-ended question reached "*anything*" he should "know about," of which guns and money were examples. A typical reasonable person would not think that Winfield's consent was limited to places that could hold guns or money. Winfield's consent authorized a search for drugs or smuggled

13

cigarettes or child pornography as things Trottier should "know about," even in places that could contain neither guns nor large sums of money.  This case is nothing like <u>Jimeno</u>; Trottier did not tell Winfield that he was looking for (or suspected she had) any particular kind of contraband.[3]

Nevertheless, Winfield's consent did not arguably extend to Trottier's reading her mail.  He did not, for example, get specific consent to search for evidence of extortion by mail or securities fraud.  The Fourth Amendment specifically protects "[t]he right of the people to be secure in their . . . papers."  U.S. Const. amend. IV. Reading a person's personal mail is a far greater intrusion than a search for contraband because it can invade a person's thoughts.  <u>See</u> <u>United States v. Dichiarinte</u>, 445

---

[3]  Winfield arguably limited the scope of her consent to the trunk of the car.  She repeatedly referred to her trunk during her interaction with Trottier.  Moreover, Trottier asked Winfield, "there's nothing in there?" while standing with her at the rear of her car.  <u>See</u> <u>United States v. Neely</u>, 564 F.3d 346, 349-51 (4th Cir. 2009) (concluding that scope of consent was impliedly limited to trunk of car based on surrounding circumstances).  We need not decide the issue because even if Winfield *arguably* limited her consent in this way, a reasonable officer in Trottier's place could believe that the scope was not so limited.  <u>See</u> <u>Taravella v. Town of Wolcott</u>, 599 F.3d 129, 134-45 (2d Cir. 2010) ("[T]he qualified immunity defense also protects an official if it was objectively reasonable for him at the time of the challenged action to believe his acts were lawful." (internal quotation marks omitted)).

F.2d 126, 130 n.4 (7th Cir. 1971) ("The fact that the defendant submitted to a degree of intrusion upon his privacy by permitting the agents to enter his home and rummage through his personal property does not mean that the much greater intrusion on his privacy resulting from government agents' reading his personal papers must automatically be allowed."). Given this greater intrusion, the typical reasonable person would not assume that consent to a general search of a car for contraband would include consent to read personal papers. Once Trottier opened the envelope and discovered neither large sums of money nor contraband,[4] he should have moved on to search the rest of the car. Trottier exceeded the scope of Winfield's consent when he read the letter.

Trottier argues that he read her mail because he thought it might contain evidence of a parole or probation violation. That is a conceivable rationale for reading mail, just as Trottier might have perused love letters for evidence of statutory rape, or brokerage receipts for evidence of insider trading. But the issue is whether a reasonable person would believe that the consent given by

---

[4] We assume without deciding that the envelope could have contained contraband.

15

Winfield authorized such a search for such a purpose.  We think not.  And Trottier cites no persuasive authority in his support.[5]

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"  Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006).  A typical reasonable person would not assume that Winfield gave Trottier consent to read her personal mail.  Therefore, Trottier violated Winfield's Fourth Amendment right to be free from unreasonable searches.

---

[5]    We are unpersuaded by the one case holding that generalized consent to search an area grants police the authority to read documents found in that area.  United States v. De La Rosa, 922 F.2d 675, 679 (11th Cir. 1991).  The rest are easily distinguishable.  In United States v. Kwan, No. 02 CR. 241, 2003 WL 21180401, at *6 (S.D.N.Y. May 20, 2003), the defendant authorized the police to "look around," knowing they were investigating a possible theft of confidential documents.  Id. at *1; cf. Jimeno, 500 U.S. at 252.  Moreover, the court focused on whether Kwan had given the agents consent to search in his desk, not read his papers.  Id. at *6.
   The search in United States v. Vaneenwyk was a lawful search incident to arrest; so the discussion as to scope of consent was dicta.  206 F. Supp. 2d 423, 425 (W.D.N.Y. 2002).
   In United States v. Reyes, 922 F. Supp. 818, 822 (S.D.N.Y. 1996), and United States v. Galante, No. 94 Cr. 633, 1995 WL 507249, at *2 (S.D.N.Y. Aug. 25, 1995), the officers read no personal papers; they searched the digital memory of pagers and cell phones found in a car they had consent to search.  See Smith v. Maryland, 442 U.S. 735, 745-46 (1979) (holding that defendants have no legitimate expectation of privacy in numbers they dialed or numbers that dialed them).

**B**

Trottier is entitled to qualified immunity if the right he violated was not "clearly established" at the time of the events at issue. Saucier v. Katz, 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

We must first determine "the level of generality at which the relevant 'legal rule' is to be identified." Anderson v. Creighton, 483 U.S. 635, 639 (1987). To do so, we should "'balance . . . the interests in vindication of citizens' constitutional rights and in public officials' effective performance in their duties.'" Id. (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)). The right must be defined "in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640.

The district court defined the right at a level so general as to be "insufficiently clear": "'[I]t is a

17

violation of a suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given.'" Winfield v. Trottier, No. 5:08-cv-278, 2011 WL 4442933, at *11 (D. Vt. Sept. 21, 2011) (alteration in original) (quoting United States v. McWeeney, 454 F.3d 1030, 1034 (9th Cir. 2006)).

The right at issue is properly stated as follows: It is a Fourth Amendment violation when a police officer reads a suspect's private papers, the text of which is not in plain view, while conducting a search authorized solely by the suspect's generalized consent to search the area in which the papers are found. No prior case in the Second Circuit has so held. Accordingly, Trottier's actions were "'objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken,'" X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999) (alterations omitted) (quoting Anderson, 483 U.S. at 639), and he is entitled to qualified immunity.

                    *    *    *

The district court's decision denying Trottier's motion for summary judgment is reversed and the case is remanded to the district court with instructions to enter judgment for Trottier on the ground of qualified immunity.

18