*United States v. Vega*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of December, two thousand twenty-one.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*,
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                            20-4135

JOSHUA VEGA,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Appellee: | Paul D. Silver, Assistant United States Attorney (of counsel), *for* Antoinette T. Bacon, Acting United States Attorney for the Northern District of New York, Albany, New York. |
| For Defendant-Appellant: | Benjamin W. Hill, Capezza Hill, LLP, Albany, New York. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Mordue, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Joshua Vega appeals from a December 10, 2020 judgment that was based in part on an August 22, 2019 order of the United States District Court for the Northern District of New York (Mordue, *J.*), denying his motion to suppress a handgun and other evidence uncovered during a warrantless search of his apartment. After entering a conditional plea agreement that reserved his right to appeal the denial of his motion to suppress, Vega was sentenced to 51 months in prison on one count of having a prior felony conviction and possessing a loaded firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). On appeal, Vega argues that the district court erred in finding that the police lawfully searched his apartment based on the apparent consent of a visitor, Latifah Parker. He also asserts that the handgun was not in "plain view" in the area within the scope of Parker's consent; that the police officers lacked justification for conducting a "protective sweep" of his apartment; and that exigent circumstances did not justify the officers' search. For the following reasons, we **AFFIRM** the district court's denial of the motion to suppress. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference here only as necessary to explain our decision.

\*     \*     \*

"On an appeal challenging a district court's ruling on a motion to suppress evidence, we review its legal conclusions *de novo* and its findings of fact for clear error." *United States v. Iverson*, 897 F.3d 450, 459 (2d Cir. 2018) (citing *United States v. Ganias*, 824 F.3d 199, 208 (2d

Cir. 2016) (en banc)). "In reviewing the denial of such a motion, we 'view[] the evidence in the light most favorable to the government.'" *United States v. Delva*, 858 F.3d 135, 148 (2d Cir. 2017) (quoting *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009)). In addition, "we give 'special deference to findings that are based on determinations of witness credibility.'" *Id.* (quoting *United States v. Lucky*, 569 F.3d 101, 106 (2d Cir. 2009)). "'Because the trial court is in a unique position to evaluate witnesses' credibility, we will not reverse its determination on' such issues as the voluntariness of consent 'unless the decision is clearly erroneous.'" *Iverson*, 897 F.3d at 459 (quoting *United States v. Davis*, 967 F.2d 84, 86 (2d Cir. 1992)).

Vega principally argues that the district court erred in finding that Parker provided consent for the officers to search his apartment, contending that "the most that can be said is that Parker consented to the officers' entry into the apartment, not to their subsequent warrantless search of it." Appellant's Br. at 9. By extension, he argues that the handgun was not in "plain view of the consented area" because the handgun was located beyond the entrance of the apartment. Appellant's Br. at 18 (emphasis omitted). We disagree.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The search of a home is reasonable, for Fourth Amendment purposes, if it is conducted pursuant to the voluntary consent of the resident or a person otherwise able to grant consent. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 186–88 (1990). "Determination of whether such an individual has so consented requires a fact-based inquiry that considers the 'totality of all the circumstances.'" *Iverson*, 897 F.3d at 458 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

3

If the defendant himself is not present to grant consent, a "warrantless police search of [the] defendant's private premises which would otherwise violate the defendant's rights under the Fourth Amendment is lawful if conducted pursuant to the consent, voluntarily given, of another person who has authority to consent." *United States v. McGee*, 564 F.3d 136, 138 (2d Cir. 2009) (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974)). "[E]ven if a third party lacks actual authority to consent to a search of a particular area, he still may have *apparent authority* to consent to the search." *Moore v. Andreno*, 505 F.3d 203, 209 (2d Cir. 2007) (emphasis added) (citing *United States v. Buckner*, 473 F.3d 551, 555 (4th Cir. 2007)). "The Supreme Court has explained that apparent authority to give consent 'must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?'" *McGee*, 564 F.3d at 139 (alteration in original) (quoting *Rodriguez*, 497 U.S. at 188). Moreover, "[t]he government must show by a preponderance of the evidence that the consent was voluntary and not 'coerced, by explicit or implicit means, by implied threat or covert force.'" *United States v. Cacace*, 796 F.3d 176, 189 (2d Cir. 2015) (per curiam) (quoting *United States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006)). The consent must result from the individual's "free and unconstrained choice" and not "mere acquiescence in a show of authority." *Iverson*, 897 F.3d at 458 (internal quotation marks and citation omitted).

"To determine the parameters of consent, we ask 'what would the typical reasonable person have understood by the exchange between the officer and the [consenting party]?'" *Winfield v. Trottier*, 710 F.3d 49, 55 (2d Cir. 2013) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). "The scope of a search is generally defined by its expressed object." *Id.* (quoting *Jimeno*, 500 U.S. at 251). Accordingly, we have held that where an officer received consent to search a car

4

to check if "[t]here's nothing in there [the officer] should know about," the consent "authorized a search for drugs or smuggled cigarettes or child pornography as things [the officer] should 'know about,'" but "did not arguably extend to [the officer's] reading her mail." *Id.* We have likewise distinguished consent for officers to enter an area from consent for officers to conduct a warrantless search of that area. *See, e.g.*, *United States v. Gandia*, 424 F.3d 255, 265 (2d Cir. 2005) (remanding for factfinding as to whether a defendant who allowed officers to enter his apartment for a conversation also consented to a search of particular rooms in the apartment); *United States v. Moran Vargas*, 376 F.3d 112, 113–14, 116 (2d Cir. 2004) (noting that a defendant who allowed officers to enter his motel room for a conversation had not consented to a search of his motel bathroom).

The police officers and Parker offered different accounts about Parker's statements regarding whether she lived in Vega's apartment and the extent to which the officers directed Parker's entry through the apartment's windows. The district court "[gave] credence to the Officers' testimony and not Parker," citing Parker's alcohol consumption on the night at issue, inconsistencies between her testimony at the suppression hearing and her interview with Federal Bureau of Investigation Task Force officers, and her personal relationship with Vega. Joint App'x at 293. Crediting the officers' narrative of the events at issue, the district court found that Parker "conveyed to the Officers that she lived at the apartment" and subsequently "agreed to let the Officers check inside the apartment for the other person in the domestic incident, went inside, opened the door for them, and stood aside as they went about the search." Joint App'x at 293. Based on these factual findings, the district court concluded that "the police were reasonable in believing that Parker possessed the authority to consent to the warrantless search of the apartment" and that "Parker gave consent freely and voluntarily." Joint App'x at 294.

5

We discern no clear error in the district court's decision to rely on the officers' testimony given its well-considered analysis of the witnesses' narratives, its "unique position to evaluate witnesses' credibility," *Davis*, 967 F.2d at 86, and the "special deference" afforded to "findings that are based on determinations of witness credibility," *Lucky*, 569 F.3d at 106 (citation omitted).

Accordingly, we agree that Parker had apparent authority to consent to a search of the apartment based on the officers' testimony that Parker told them that she lived in the apartment, thus "warrant[ing] a man of reasonable caution in the belief that [she] had authority over the premises," *Rodriguez*, 497 U.S. at 188 (internal quotation marks and citation omitted). Likewise, we see no clear error in the district court's conclusion that Parker voluntarily consented to the officers' entry and search of the apartment. As the district court recognized, Parker was "intoxicated" on the night at issue, Joint App'x at 292, and both officers testified that Parker did not provide verbal consent immediately before they entered the apartment, Joint App'x at 95, 154. Yet the officers also stated that Parker voluntarily entered through the apartment window, unlocked the front door, and "stood off to the side as like a nonverbal cue to let [them] walk in to talk to the other party." Joint App'x at 94. Furthermore, the officers testified that Parker did not verbally or nonverbally forbid the officers from entering the apartment and that they did not threaten, arrest, or draw their weapons against Parker, suggesting her consent was not "mere acquiescence in a show of authority," *Iverson*, 897 F.3d at 458 (internal quotation marks and citation omitted). Thus, taking into account the "totality of all the circumstances," *Schneckloth*, 412 U.S. at 227, the district court did not clearly err in determining that the government had met its burden of proving that Parker's consent was "voluntary and not coerced," *Cacace*, 796 F.3d at 189 (internal quotation marks and citation omitted).

Finally, we conclude that Parker's consent extended to not only the officers' entry into Vega's apartment but also their search of the apartment. The officers testified that Parker "agreed to let [the officers] talk to whoever it was inside," Joint App'x at 89, and that they told Parker that they "needed to talk to the other person [who was purportedly in the apartment] to make sure that that person was okay . . . almost like a well-being check," Joint App'x at 94. The "expressed object," *Winfield*, 710 F.3d at 55 (quoting *Jimeno*, 500 U.S. at 251), of the search was thus to locate and conduct a welfare check on the individual who was purportedly in the apartment. Therefore, "the typical reasonable person," *id.* (quoting *Jimeno*, 500 U.S. at 251), would have understood that Parker's consent necessarily encompassed the officers' search of the apartment since entry alone would not have fulfilled the objective of locating and checking on the other party in the apartment. For the same reason, we reject Vega's argument that the handgun was not in "plain view of the consented area" because the handgun was not visible from the apartment's entrance. Appellant's Br. at 18 (emphasis omitted). Because we conclude that Parker consented to a search of the apartment beyond the entrance, we agree with the district court that the handgun was in plain view in an area to which her consent extended.

*        *        *

We have considered Vega's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7