23-7913-cr
*United States v. Robinson*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

      **At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of November, two thousand twenty-four.**

PRESENT:
>ROBERT D. SACK,
>SUSAN L. CARNEY,
>JOSEPH F. BIANCO,
>>*Circuit Judges*.

---

UNITED STATES OF AMERICA,

      *Appellee*,

    v.                                              23-7913-cr

RONNIE ROBINSON,

      *Defendant-Appellant*.

---

| | |
|---|---|
| FOR APPELLEE: | THOMAS R. SUTCLIFFE, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, New York. |
| FOR DEFENDANT-APPELLANT: | DANIELLE NERONI REILLY, Law Office of Danielle Neroni, Albany, New York. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Glenn T. Suddaby, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on November 29, 2023, is **AFFIRMED**.

Defendant-Appellant Ronnie Robinson appeals from the district court's judgment of conviction following his conditional guilty plea to: (1) possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). His conditional plea reserved the right to challenge the district court's denial of his motion to suppress evidence seized during a warrantless search of his girlfriend's apartment, which included the marijuana and firearm that formed the basis for the above-referenced charges. On appeal, Robinson now challenges the denial of that motion, after an evidentiary hearing, making the following arguments: (1) officers violated his Fourth Amendment rights by entering his girlfriend's apartment; (2) upon entering the apartment, officers also violated his Fourth Amendment rights by searching his cellphone without a warrant, or, in the alternative, without reasonable suspicion; and (3) officers further violated his Fourth Amendment rights by searching his girlfriend's apartment without a warrant, or, in the alternative, without reasonable suspicion. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

**BACKGROUND**

Prior to the convictions he currently challenges on appeal, Robinson pleaded guilty, on July 6, 2015, in the Northern District of New York, to possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). He was sentenced to a 48-month term of imprisonment followed by a three-year term of supervised release. As part of that sentence, the district court imposed standard conditions of supervised release, which required Robinson, *inter alia*, to "notify the probation officer at least ten days prior to any change in residence"; "not frequent places where controlled substances are illegally sold, used, distributed, or administered"; "not associate with any persons engaged in criminal activity"; and "not associate with any person convicted of a felony." App'x at 83. The conditions further obligated Robinson to "permit a probation officer to visit him . . . at any time at home or elsewhere." *Id*. Finally, the district court imposed a search condition that required Robinson to:

> submit his . . . person, and any property, house, residence, vehicle, papers, effects, computer, electronic communications devices, and any data storage devices or media, to search at any time, with or without a warrant, by any federal probation officer, or any other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by the defendant.

*Id*.

On March 12, 2021, Robinson signed a copy of his judgment of conviction, acknowledging that "[t]he conditions of supervision ha[d] been read to [him]," he "fully underst[ood] the conditions," and he had "been provided a copy of them." *Id.* at 84. On or around that same day, Robinson began his term of supervised release. United States Probation Officer Marc Lavigne

3

met with Robinson approximately 10 days later, when he "went over [Robinson's supervised release] conditions with him," "read them to him," and "reminded him of them." *Id.* at 164.

According to the testimony adduced at the suppression hearing, in November 2021 the Federal Bureau of Investigation ("FBI") and New York State Police were investigating the murder of Avery Miller. Robinson knew Miller, as well as one of the murder suspects the investigators identified; both Miller and the suspect had prior felony convictions. Toll records showed that Robinson communicated with both Miller and that suspect around the time of Miller's death. When investigators contacted Robinson to ask him questions about the murder, he refused to speak with them. Investigators then asked Officer Lavigne to help them speak with Robinson again.

On the morning of November 30, 2021, Officer Lavigne and United States Probation Officer Chelsea Deyo went to Robinson's approved residence, located at 1606 5th Avenue, Watervliet, New York, to speak with him. Robinson was not there. Officer Lavigne spoke with one of Robinson's roommates, who first stated he had not seen Robinson for several days, but later in the conversation claimed Robinson had left the residence just that morning.

Officers Lavigne and Deyo then traveled to the residence of Robinson's girlfriend, Kimberly Virola, located at 85 Aiken Avenue, Rensselaer, New York ("85 Aiken"). Officer Lavigne believed Robinson would be there because Robinson had previously stayed there. When the two probation officers arrived, Virola answered the door. Officer Lavigne asked Virola if Robinson was there, and Virola replied that he was sleeping in the back bedroom. Officer Lavigne asked to see Robinson, and Virola said that she would go get him. Officer Lavigne testified that Virola's tone during the encounter was "fine, decent, [and] respectful," and she was not combative. App'x at 175. According to the officers, they followed Virola inside, and Virola did not object to

4

their entering the apartment. Sometime later, Officer Lavigne opened the door to the apartment and let in FBI Special Agent Kevin Gonyo and two state police investigators. When Virola saw the investigators in her apartment, she asked who they were, and one of the state police investigators introduced himself. Agent Gonyo testified that Virola did not object to their presence.

Once Robinson emerged from the bedroom, he and Officer Lavigne proceeded to speak in the kitchen. Robinson admitted that he had stayed at 85 Aiken the previous night and that he had recently been staying there approximately two nights a week. Officer Lavigne also asked Robinson for his cellphone and its passcode, which Robinson provided. Officer Lavigne then handed the cellphone to Agent Gonyo.

Agent Gonyo and the state police investigators then interviewed Robinson about Miller's murder. Robinson admitted to communicating with one of the murder suspects around the time Miller was killed. Agent Gonyo also reviewed the contents of Robinson's cellphone with him. On it, Agent Gonyo discovered a text message, written a few weeks earlier, on November 2, in which Robinson offered to sell someone "gas" or "runtz" for "30 a 8th 200 for the oz." Gov. App'x at 1; *see also* App'x at 128–29. Based on his experience, Agent Gonyo understood both "gas" and "runtz" to refer to marijuana. Agent Gonyo also reviewed other similar text messages in Robinson's cellphone. He showed those messages to Officer Lavigne.

After the officers reviewed the contents of Robinson's phone, Officer Lavigne obtained approval from the chief probation officer to conduct a search of the apartment. Virola refused to consent to the search, and stated that she had a small quantity of marijuana in her bedroom. Officers Lavigne and Deyo, along with the investigators, then searched the apartment, where they

5

found, among other things, marijuana and a firearm.  Robinson admitted that the firearm belonged to him.

## DISCUSSION

"On an appeal challenging a district court's ruling on a motion to suppress evidence, we review its legal conclusions *de novo* and its findings of fact for clear error."  *United States v. Iverson*, 897 F.3d 450, 459 (2d Cir. 2018).  "In reviewing the denial of such a motion, we view the evidence in the light most favorable to the government."  *United States v. Delva*, 858 F.3d 135, 148 (2d Cir. 2017) (alteration adopted) (internal quotation marks and citation omitted).  We "pay special deference to the district court's factual determinations going to witness credibility."  *United States v. Jiau*, 734 F.3d 147, 151 (2d Cir. 2013).

### I.     Apartment Entry

Robinson first contends that law enforcement officers impermissibly entered his girlfriend's residence.  The district court disagreed, determining that Virola implicitly consented to Officers Lavigne and Deyo entering the apartment.  We conclude that there is no basis to disturb this factual determination.

"To determine the parameters of consent, we ask 'what would the typical reasonable person have understood by the exchange between the officer and the [consenting party]?'"  *Winfield v. Trottier*, 710 F.3d 49, 55 (2d Cir. 2013) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).  "[I]t is well settled that consent may be inferred from an individual's words, gestures, or conduct."  *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir. 1981).  "Because the trial court is in a unique position to evaluate witnesses' credibility, we will not reverse its determination on

such issues as the voluntariness of consent unless the decision is clearly erroneous." *Iverson*, 897 F.3d at 459 (internal quotation marks and citation omitted).

The district court credited the probation officers' testimony regarding the encounter with Virola in finding that she implicitly consented to their entry.[1] Specifically, both Officers Lavigne and Deyo testified that Virola did not object when they entered the apartment, nor did she object when they followed her to the bedroom, where Robinson was sleeping. Both officers also testified that Virola was never combative and maintained a regular tone throughout their interactions. We discern no error, much less clear error, in the district court's finding, based upon its credibility determinations, of consent by Virola for the officers to enter the apartment.

In any event, even assuming *arguendo* that Virola did not consent to the entry, Robinson's Fourth Amendment rights were not violated because, as the district court correctly noted, Robinson's supervised release conditions required him to "permit a probation officer to visit him . . . at any time at home *or elsewhere*."[2] App'x at 83 (emphasis added).

---

[1] In reaching this determination, the district court also considered the declarations of Robinson and Virola and, to the extent the declarations contradicted the officers' testimony, found the officers' testimony credible.

[2] Robinson also contends that, even if the probation officers had authorization to enter the apartment, there was no legal basis to allow the *other law enforcement officers* to later enter the residence. We disagree. As a threshold matter, nothing in the record suggests that Virola limited her consent to the probation officers. *See Iverson*, 897 F.3d at 460 ("Given [the officer's] testimony, which the court found credible, the court permissibly inferred that [the defendant] saw [the drug-detection canine] and that his invitation [for the officer] to enter the apartment implicitly encompassed [the canine]."). In any event, as the district court noted, the search condition explicitly permitted the probation officer to conduct a search with "any other law enforcement officer from whom the Probation Office has requested assistance." App'x at 83 In short, because the probation officers were permitted to enter the apartment pursuant to Virola's consent and Robinson's conditions of release and (as discussed *infra*) lawfully conducted searches of his phone and the apartment pursuant to the search condition, the participation of other law enforcement personnel during the search provides no basis to find a Fourth Amendment violation. *See United States v. Reyes*, 283 F.3d 446,

7

## II. Cellphone Search

Robinson next argues that the search of his cellphone, while he was in Virola's apartment, violated his Fourth Amendment rights because law enforcement did not have reasonable suspicion to conduct the search. We are unpersuaded.

The search condition contained in Robinson's conditions of supervised release allows a probation officer, or "any other law enforcement personnel" assisting the officer, to search "any . . . electronic communications devices" so long as the officer has "reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by the defendant." App'x at 83.

"Reasonable suspicion exists when there are specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion on a citizen's liberty interest." *United States v. Lajeunesse*, 85 F.4th 679, 687 (2d Cir. 2023) (internal quotation marks and citation omitted). Reasonable suspicion "need not rise to the level required for probable cause, and . . . falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

The record fully supports the district court's determination that the officers reasonably suspected that Robinson had violated at least one condition of his supervised release: that he "shall not associate with any persons engaged in criminal activity and shall not associate with any person

471 (2d Cir. 2002) ("The so-called 'stalking horse' theory does not exist as a matter of law, since the objectives and duties of probation officers and law enforcement personnel are often parallel and frequently intertwined. Accordingly, the law permits cooperation between probation officers and other law enforcement officials so that they may work together and share information to achieve their objectives."); *see also United States v. Lajeunesse*, 85 F.4th 679, 689 (2d Cir. 2023) (noting that other law enforcement officers may participate in a probation search so long as "they are acting under the direction of the probation officer" (alteration adopted) (internal quotation marks and citation omitted)).

convicted of a felony." App'x at 83. The officers had toll records indicating that Robinson had communicated with Miller and a suspect in Miller's murder—both of whom had prior felony convictions—around the time of Miller's death. The officers therefore had the reasonable suspicion needed under the search condition to support a search of Robinson's cellphone.[3]

## III.    Apartment Search

Finally, Robinson argues that the warrantless search of his girlfriend's apartment at 85 Aiken, during which marijuana and a firearm were seized, violated his Fourth Amendment rights. We disagree.

The Supreme Court has long recognized that the "operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin v. Wisconsin*, 483 U.S. 868, 873–74 (1987); *see also United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002) (holding that the principles underpinning the special needs doctrine "apply *a fortiori* to federal supervised release"). Under the special needs doctrine, "a search of a parolee is permissible so long as it is reasonably related to the parole officer's duties." *United States v. Grimes*, 225 F.3d 254, 259 n.4 (2d Cir. 2000); *see also Reyes*, 283 F.3d at 458 (noting that holdings regarding diminished expectations of privacy of parolees subject to supervision conditions apply "with equal force to individuals . . . subject to

---

[3] Robinson's argument that the non-probation law enforcement officers, such as Agent Gonyo, could lawfully search his cellphone only with a warrant is without merit. As noted *supra*, probation officers were permitted to seek assistance from other law enforcement personnel to conduct searches pursuant to a condition of Robinson's supervised release. Moreover, the Supreme Court has made clear that an ordinary law enforcement officer needs "no more than reasonable suspicion to conduct a search" pursuant to a valid search condition. *United States v. Knights*, 534 U.S. 112, 121 (2001); *see also United States v. Braggs*, 5 F.4th 183, 187–88 (2d Cir. 2021) (noting that the search in *Knights* was conducted "by [a] municipal police officer[] charged with vindicating the State's general interest in law enforcement" (internal quotation marks and citation omitted)).

federal supervised release—the reformed successor to federal parole"). Robinson counters that the special needs doctrine does not apply here because the officers were not searching *his* residence, and that the warrantless search therefore invaded his expectation of privacy as an overnight guest in his girlfriend's residence.

"Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term 'probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable." *United States v. Knights*, 534 U.S. 112, 121 (2001). "Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (internal quotation marks and citations omitted).

Applying that analytical framework here, we conclude that the search of Virola's apartment was reasonable. Robinson's status as a supervised releasee "subject to a search condition informs both sides of th[e] balance." *Knights*, 534 U.S. at 119. Beginning with Robinson's private interests, an "offender on supervised release has a diminished expectation of privacy that is inherent in the very term 'supervised release.'" *United States v. Oliveras*, 96 F.4th 298, 308 (2d Cir. 2024) (internal quotation marks and citation omitted). Robinson's supervised release conditions allowed a probation officer or other law enforcement officer to search "any property, house, [or] residence . . . at any time, with or without a warrant" so long as there was "reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by the defendant." App'x at 83. Robinson signed and acknowledged that he fully understood this condition. "[P]ersons on supervised release who sign such documents manifest an

10

awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy." *United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004) (internal quotation marks and citation omitted).

As reflected in the terms of his search condition, the diminution of Robinson's expectation of privacy in his own home applies equally when he is in the home of another. To be sure, "a houseguest has a legitimate expectation of privacy in his host's home." *Minnesota v. Olson*, 495 U.S. 91, 98 (1990); *see also United States v. Osorio*, 949 F.2d 38, 42 (2d Cir. 1991). While it is an "unremarkable proposition" that Robinson "may have a sufficient interest in a place other than his home to enable him to be free in that place from unreasonable searches and seizures," *Olson*, 495 U.S. at 98 (internal quotation marks and citation omitted), that privacy expectation does not necessarily entitle Robinson to the Fourth Amendment's full protections, such as the requirement of a warrant supported by probable cause when staying at a place other than his home. In arguing that a search of Virola's residence is unreasonable unless accompanied by a warrant supported by probable cause, Robinson in effect claims that he has a *greater* expectation of privacy in Virola's home than in his own. We reject such an argument because it would impermissibly "grant the suspect broader rights in the third party's home than he would have in his own home." *United States v. Bohannon*, 824 F.3d 242, 250 (2d Cir. 2016) (internal quotation marks and citation omitted). Robinson's reasonable privacy expectation in another's home is therefore, at most, coextensive with, but certainly no greater than, the significantly reduced expectation he has in his own home, where "Fourth Amendment protections are at their apex." *Simon v. City of New York*, 893 F.3d 83, 100 (2d Cir. 2018).

11

On the other side of the balance, the government's interests here are substantial.  "One of the principal purposes of a probation/parole officer's observation and supervision responsibilities is to ensure that a convicted person under supervision does not again commit a crime." *Reyes*, 283 F.3d at 459; *see Knights*, 534 U.S. at 119 ("It was reasonable to conclude that the search condition would further the two primary goals of probation—rehabilitation and protecting society from future criminal violations."); *Griffin*, 483 U.S. at 876 ("A warrant requirement would interfere to an appreciable degree with the probation system" by "mak[ing] it more difficult for probation officials to respond quickly to evidence of misconduct" and "reduc[ing] the deterrent effect that the possibility of expeditious searches would otherwise create.").  The efficacy of the search condition would be greatly undermined, however, if a supervised releasee could circumvent it by simply entering another's home for the night, thereby creating "an incentive [for supervised releasees] to conceal their criminal activities" and "dispose of incriminating evidence" at another's home. *Knights*, 534 U.S. at 120.

Balancing Robinson's diminished privacy interest with the government's substantial interest in maintaining an effective supervised release program, we conclude that the search of Virola's apartment did not offend Robinson's Fourth Amendment rights so long as law enforcement officers possessed the reasonable suspicion as to Robinson that was required for a search of "any. . . residence" pursuant to his search condition.[4]  App'x at 83.

---

[4]  We render no opinion as to whether *Virola*'s Fourth Amendment rights were violated by the search.  To the extent Robinson complains on behalf of Virola, he does not have standing to do so.  *See Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." (internal quotation marks and citation omitted)).

The reasonable suspicion standard is readily satisfied here. The evidence recovered from the cellphone gave the officers reasonable suspicion that Robinson was engaged in unlawful conduct—namely, selling illegal drugs. In particular, officers found on Robinson's cellphone text messages from November 2, 2021 in which Robinson offered to sell someone "gas" or "runtz" at the price of "30 a 8th 200 for the oz." Gov. App'x at 1; *see also* App'x at 128–29. Agent Gonyo testified that he understood both terms to refer to marijuana. Agent Gonyo reviewed other similar messages on Robinson's phone discussing Robinson's sale of marijuana. As further support, in August 2021 Officer Lavigne had learned from a police officer that the officer believed he had observed Robinson on a street corner selling marijuana. Taken together, these "specific and articulable facts" amply supported the officers' reasonable suspicion that Robinson was engaged in illicit drug sales, which then permitted a search of the apartment pursuant to his search condition.[5] *Lajeunesse*, 85 F.4th at 687 (internal quotation marks and citation omitted).

In sum, the search of 85 Aiken, supported by reasonable suspicion and conducted by both probation officers and investigative officers "under the direction of the probation officer," *Lajeunesse*, 85 F.4th at 689 (alteration adopted) (internal quotation marks and citation omitted), pursuant to Robinson's search condition, did not violate his Fourth Amendment rights.[6]

---

[5] Robinson's contention that the evidence of marijuana dealing was "so old that it would be hard to justify a search" is unpersuasive. Appellant's Br. at 21. Only four weeks had elapsed since the November 2, 2021 text messages. Moreover, the multiple messages regarding sales of marijuana, coupled with the fact that Robinson had been observed potentially selling marijuana in August 2021, evidenced "a pattern of continuing criminal activity, such that there is reason to believe that the cited activity was probably not a one-time occurrence." *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (internal quotation marks and citation omitted).

[6] Finally, to the extent that Robinson argues that the evidence should have been suppressed because the officers were motivated to search his phone and 85 Aiken in order to "strongarm" him into cooperating

            \*             \*             \*

We have considered Robinson's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

with law enforcement in the investigation of the Miller murder, Appellant's Br. at 6, we disagree. In assessing the reasonableness of the search here, we do not consider the subjective intent of the officers. *See Knights*, 534 U.S. at 122 ("Because our holding rests on ordinary Fourth Amendment analysis that considers all the circumstances of a search, there is no basis for examining official purpose."); *Whren v. United States*, 517 U.S. 806, 814 (1996) ("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." (emphasis in original)). Thus, because we have determined that the searches were supported by the reasonable suspicion required by the search condition and were reasonable under the Fourth Amendment, the alleged subjective motivations of the officers provide no basis for suppression of the evidence obtained during the searches.

14